W. A. B. GRAHAM v. COMMONWEALTH LIFE INSURANCE COMPANY.

154 So. 335.

Opinion Filed April 24, 1934.

586

*W. Kenneth Barnes,* for Appellant;

*Peterson, Carver & Langston,* for Appellee.

BUFORD, J.—The appeal here is from final decree in favor of the appellee in a mortgage foreclosure suit.

Appellee filed its bill of complaint to foreclose a mortgage originally for $12,000.00 dated the 5th day of June, 1926, to secure the payment of nine notes each in the sum of $600.00, payable one each every six months from date, respectively, and a tenth note for the sum of $6,600.00 payable June 5, 1931, all bearing interest at the rate of 6%.

It was alleged that the mortgage and notes were given to procure a loan with which to construct a building on the lands described in the mortgage and it is alleged in the bill:

"That being the owner of the property involved in this suit and being desirous of selling the same to the defendant, Grover C. Freeman, who was then and there desirous of purchasing the said lot and erecting thereon an apartment house, the defendant, A. E. Shannon, and the defendant, Grover C. Freeman, entered into an agreement wherein A. E. Shannon agreed as follows:

"1. To sell the lot to Grover C. Freeman for the purpose of constructing thereon an apartment house and to convey the same to him by a warranty deed.

"2. To take in part payment of the same a note in the sum of $4,450, the same to be secured by a mortgage on the lot in question, to be made subordinate or second to a long-time mortgage to be given on said lot to some insurance company to secure funds with which to construct said apartment house."
and wherein and whereby the said Grover C. Freeman agreed:

"1. To purchase the said lot of and from the said A. E. Shannon.

"2. To pay part of the purchase money of said lot for cash and to give to A. E. Shannon a note in the sum of $4,450.00, payable as follows: $25.00 on June 16, 1926, $25.00 on the 16th day of each and every month thereafter until the sum of $1,150.00 has been paid, and $3,300.00 on November 16th, 1929, the sums to be secured by a mortgage on said lot to be made subordinate to a long-time mortgage to be given to someone for funds with which to erect on said lot an apartment house.

"3. To construct upon said premises a substantial apartment house of approximately 20 rooms thereon, the same to be constructed with funds to be secured by a first mortgage on said lot.

"Your orator further says that at the time the said Grover C. Freeman undertook to purchase the said lot, it was contemplated by Grover C. Freeman and A. E. Shannon that Grover C. Freeman would secure such long-time loan from some insurance company; that at the time of the execution of the warranty deed from A. E. Shannon and wife, to Grover C. Freeman, both Freeman and Shannon

believed and understood that the Prudential Insurance Company of America would make a loan to Grover C. Freeman in the sum of $11,500.00 to be used in financing the construction of said apartment house; that on February 3, 1926, A. E. Shannon and wife, Libbie Shannon, in conformity with their said understanding or agreement conveyed by a warranty deed to Grover C. Freeman the land involved in this suit, which warranty deed was filed for record on February 10, 1926, in the office of the Clerk of the Circuit Court of Polk County, Florida; that concurrent with the execution and delivery of said warranty deed, Grover C. Freeman and wife, Ada Freeman, executed and delivered to A. E. Shannon a promissory note in the sum of $4,450.00, payable as hereinbefore mentioned and executed and delivered unto A. E. Shannon a mortgage on the land in question to secure said note, the said mortgage reciting among other things that it was a second mortgage on said land, subject to a first mortgage on said land in the amount of $11,500.00, made to the Prudential Insurance Company of America, as will be more fully shown by a copy of said mortgage attached to the original bill, made a part hereof by reference and to which reference is prayed.

"Your orator further says that Grover C. Freeman and A. E. Shannon contemplated that the Prudential Insurance Company of America would make such loan, nevertheless the Prudential Insurance Company of America refused to make such loan to Grover C. Freeman on said lot, and did not at such time or at any time secure a mortgage deed on said lot; that thereupon the said Grover C. Freeman with the knowledge and consent of A. E. Shannon, and in conformity with his agreement with the said A. E. Shannon to hold second his said mortgage to a mortgage to be given to secure said loan, approached your orator with a view of securing money with which to take care of such improve-

ments on said lot, the said money to be evidenced by promissory notes payable to your orator and to be secured by a first mortgage on said premises.

"Your orator further says that A. E. Shannon agreed that in case it would lend to Grover C. Freeman the sum of $12,000.00 with which to improve said lot as aforesaid, that he would hold his said mortgage deed second and inferior to any mortgage deed that your orator might secure, for the purpose of constructing the said apartment house; that it was then and there understood by A. E. Shannon and at all times thereafter that his said mortgage was second and subordinate to your orator's mortgage deed.

"Your orator further says that relying on the representation that it would have a first mortgage upon the land involved in this suit, it loaned to Grover C. Freeman the sum of $12,000.00 with the full knowledge and consent of A. E. Shannon and with the understanding of A. E. Shannon that his, A. E. Shannon's, mortgage was subordinate to your orator's mortgage on said lot to secure the loan of $12,000.00.

"Your orator further says that the said Grover C. Freeman borrowed the said sum of $12,000.00 from your orator with the full knowledge and consent of A. E. Shannon to pay for the construction of said apartment house; that your orator lent such sum of money to Grover C. Freeman expressly for the purpose of paying for the construction of said apartment house and saw to it that such money was used for such purpose. Your orator further says that the $12,000.00 was actually used in the settlement of the construction of the said apartment house on said property."

The appellant demurred to the bill of complaint and the demurrer was overruled. He then filed answer and amended answer. In his amended answer he averred that his mortgage described in the bill of complaint was a first

mortgage and prior lien on the property and sought foreclosure of his prior lien in this suit.

The contract of sale between Freeman and Shannon referred to in the bill of complaint was in writing and contained the following provision:

"And the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of $4,500.00 in the manner following: $25.00 monthly, being due on the 16th day of each month, all due in four years from date first above written. Payments secured by second mortgage on premises at 8%; said party of the second part to start construction on the said lot in thirty days, a building to cost not less than $6,000.00; first mortgage not to exceed 60% of cost of building and lot."

The mortgage from Freeman to Shannon contained the following clause:

"It is understood and agreed by the said Mortgagors and the said Mortgagee that this is a second mortgage on said land, subject to a first mortgage on said land in the amount of $11,500.00 made to the Prudential Insurance Company of America."

The mortgage from Freeman to Shannon, together with the indebtedness secured thereby was assigned to W. A. B. Graham on the 4th day of February, 1928, at which time defaults had occurred and then existed in the payment of interest as well as in the payment of certain instalments of principal.

The complainant filed answer to parts of defendant's amended answer seeking affirmative relief wherein it was denied that the defendant was a purchaser for value without notice, but alleged that the defendant had full notice of the fact that the Shannon mortgage was at all times inferior to complainant's mortgage. It is contended by the appellant that complainant's mortgage was not superior to the Shan-

non mortgage because there appeared to be no provision applying to complainant's mortgage incorporated in the Shannon mortgage and that the provision contained in the original contract had been merged into the provision of the deed and mortgage made in pursuance to that contract. We do not think this position is tenable.

It is a general rule that preliminary agreements and understandings relative to the sale of property usually merge in the deed and mortgage by which the original contract becomes executed. This is not always true. In Cabal v. Simmons, *et al.*, 100 Fla. 526, 129 Sou. 777, we said, quoting with approval from Caveny v. Curtis, 257 Pa. 575, 101 Atl. Rep. 853:

" 'The general rule is that preliminary agreements and understandings relating to the sale of land become merged in the deed. This rule, however, does not apply to independent covenants or provisions in an agreement of sale not intended by the parties to be incorporated in the deed. In such case the delivery of the conveyance is merely a part performance of the contract, which remains binding as to its further provisions.' See also Willison on Contracts, 1252."

We also quoted with approval from 4 Paige on the Law of Contracts (2nd Ed.) Sec. 2568, as follows:

"A deed which is delivered after a contract for the sale of realty has been made, but which is not delivered by the vendor as in full performance of the contract, and is not accepted by the purchaser as in full performance of the contract, and which does not cover the entire subject matter contracted for, does not operate as a merger of the prior contract."

These enunciations are supported by Thompson on Real Property, Vol. 5, Sec. 4275; Doty v. Sandusky Portland Cement Co., 46 Ind., Appl. 440, 91 N. E. 569.

In Rackemann v. Riverbank Improvement Co., 167 Mass. 1, 57 Am. St. Rep. 427, it is said:

"An agreement made before the sale of land that the grantor will not sell any part of the remaining tract except at a specified price per front foot, does not contradict anything in the subsequent deed of property, and therefore, does not merge in such deed. It is a collateral agreement on a distinct subject, and, though oral, may be proved."

See also Hall v. Solomon, 61 Conn. 476, 29 Am. St. Rep. 218, and cases there cited. In 13 C. J. 598, it is said:

"While a written contract merges into itself all prior parol negotiations with reference to that contract, it does not necessarily merge all other contracts actually entered into between the parties, although relating to the same property. In order to exclude evidence of oral agreement on the ground that the parties later entered into a written contract, the oral agreement must relate to the same agreement embodied in the written contract. A written agreement does not exclude a distinct collateral oral agreement. So parties to contracts may come to an independent agreement on details as to the execution thereof at the time of contracting as well as afterward."

So we hold that the terms of the original agreement whereby it was understood and agreed that the mortgage to Shannon was to be a second mortgage was not merged in the execution of the contract by the delivery of deeds and mortgages. Aside from this, the mortgage itself showed that it was intended to be a second mortgage and while it is therein stated that this mortgage is subject to a first mortgage on said land in the amount of $12,500.00 made to Prudential Insurance Company of America, the gravamen of that agreement is not that Prudential Insurance Company shall hold a first mortgage, but that this

mortgage shall be a second mortgage, it being shown by admissible oral testimony, as well as by the original agreement, that it was in contemplation of the parties that a first or superior mortgage should be given to secure a loan for money to construct improvements on the property.

Furthermore, the record shows that prior to the assignment of this mortgage from Mrs. Shannon as Executrix to Graham, to-wit, on the 2nd day of July, 1926, Freeman and wife conveyed the lands by warranty deed to M. G. Waring. That deed recited that the title was subject to a first mortgage in the sum of $12,000.00 given to Commonwealth Life Insurance Company and subject to a second mortgage given to Shannon.

On the 2nd day of August, 1927, Waring and wife conveyed the lands to Walter S. Fuller and in the deed conveyed the title "subject, however, to one certain mortgage held by Commonwealth Insurance Company in the sum of $12,000.00 upon which there is a balance due as of this date in sum of $11,400.00. Also subject to a certain mortgage held by the Shannon Estate in the sum of $4,500.00." These deeds had been promptly recorded.

The record shows that the Shannons at all times considered their mortgage a second mortgage; that Graham negotiated for the purchase of the mortgage through his agent, another Graham, and that his agent was informed while negotiating for the purchase of this mortgage that it was a second mortgage and was subject to the Commonwealth Insurance Company's mortgage here sought to be foreclosed, and that that information was conveyed by the agent to his principal. Aside from this, as we have heretofore stated, the Shannon mortgage was assigned to Graham while in default and, therefore, Graham took with notice of all infirmities which could have lawfully been

insisted upon as to the mortgage in the hands of either the original mortgagee or his executrix.

We hold there was no error in ruling upon pleadings and also hold that the evidence amply sustains the decree of the Chancellor in favor of the appellee here.

Several assignments of error are based upon the action of the Chancellor in admitting and in rejecting certain testimony. We have examined the record in connection with these assignments of error and do not find that either constitutes a basis for reversal. It may be that some of the rulings were erroneous, but when we consider the evidence as a whole these matters appear harmless and should not be given the dignity of a cause for reversal. It clearly appears that none of such rulings cause any miscarriage of justice or worked any undue hardship or disadvantage to the appellant.

The decree should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.