William R. BENNETT, Virginia M. Bennett, Alexander Wagner, on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

BEHRING CORPORATION, Leadership Housing, July Investment Corp., Cerro Marmon Corp., Al Schecter, A. D. Bessemer, M. A. Bessemer, H. J. Fox, C. Fox, Stephen Arent, Margery Arent, Albert Arent, Andrew Manno, Elaine Manno, George Gouveia, Margret Gouveia, Gil Pacheo, Joseph Tavares, Esther Rosenman, J. Sidney Wolf, Mark Twain Hotel, Norene Ficery, Judith Contich, Majorie Daniele, George Mercier, Tamarac Enterprises, Jack Najor, Dorathy Najor, Jacob Lutz, Arthur Rosenthal, George Najjar, Georgette Najjar, Abe Blinder, Henriette Blinder, K. E. Behring and P. R. Behring, Defendants.

No. 72–886–Civ–JAG.

United States District Court,
S. D. Florida,
Civil Division.

Feb. 15, 1979.

Jon E. Krupnick, Krupnick & Campbell, Fort Lauderdale, Fla., John P. Freeman, Columbia, S. C., for plaintiffs.

Gilbert A. Haddad, Miami, Fla., Maurice M. Garcia, Hollywood, Fla., George I. Platt, Fort Lauderdale, Fla., Joe Easthope, Houston, Faircloth, Cooper & Easthope, Fort Lauderdale, Fla., Konrad Stauch, Stauch & Arabo, P.C., Southfield, Mich., Stephen Shamberg, Friedman & Koven, Chicago, Ill., Michael H. Krul, Fort Lauderdale, Fla., Jeffry M. Weissman, Miami, Fla., for defendants.

## MEMORANDUM OPINION

GONZALEZ, District Judge.

This cause is before the Court upon Cross-Motions for Summary Judgment as to Counts II, III and IV of the Amended Complaint filed herein.

This suit was filed by Plaintiffs on behalf of all present and future owners of single family homes in the City of Tamarac, Florida. Defendants are the Behring Corporation, the original developer of the City of Tamarac, plus various other defendants

that have, or have had, an interest in the respective Recreational Leases which encumber the deeds to homes in the city.

Tamarac, Florida is a development of single family homes consisting of 31 different communities, or sections, each of which was platted and developed separately, but as part of an over-all master plan. Each community is provided with a separate recreational facility consisting of a club-house, swimming pool, shuffle-board courts, etc. For the use and maintenance of which, each of the homeowners is required to pay a monthly fee. These fees are required by the terms of certain Recreation Leases which apply to each of the 31 separate communities and which are contained in the Declaration of Restrictions applicable to each separate parcel or home within each separate community.

These deed restrictions were filed by the original developer, Behring Corporation, and require all homeowners to be lessees of the recreational facility provided for that particular community.

In some instances the monthly rental is fixed over the entire life of the lease. In other instances the leases contain an escalator clause providing for rental increases depending upon changes in the consumer price index.

It is alleged that, in some cases, Behring Corporation caused the deed restrictions to be filed of record subsequent to the execution of certain of the contracts for purchase and sale of homes in Tamarac. It is *not* disputed, however, that all deed restrictions were filed prior to the closing of each and every home in Tamarac.

Upon completion of development Behring Corporation divested itself of all interest in the disputed leases by selling and assigning its rights thereunder to various investors, Defendants herein under Count VII hereof, who presently collect the monthly rentals.

In addition, the homeowners in several individual communities have purchased the recreational lease for their particular facility through the medium of not-for-profit homeowners associations or corporations to whom the monthly fees are now paid.

Plaintiffs have launched a seven count multi-pronged attack upon the validity and enforceability of the deed restrictions which require the homeowners to be lessees of the recreational facilities of each of their respective communities. Plaintiffs allege, inter alia, that the deed restrictions were illegally tied to the sale of the homes; that the defendant, Behring Corporation, fraudulently misrepresented the nature of the deed restrictions; and that Behring breached its contract for purchase and sale by delivering deeds encumbered by the deed restrictions complained of. Plaintiffs Count V claim that Behring violated the Interstate Land Sales Act, 15 U.S.C. § 1701, et seq. has been dismissed.

The plaintiffs' fraudulent misrepresentation claims, Count I and VI, are being prosecuted by three individual plaintiffs, William and Virginia Bennett, and Alexander J. Wagner against the individual defendant, Behring Corporation. These two counts have been severed and are set for trial.

Count VII is being prosecuted by a Rule 23(b)(3) class of all single family homeowners in the City of Tamarac against all lessors who have or have had an interest in the various recreation leases. Count VII alleges a Sherman Antitrust Act tie-in claim and will be set for trial by a future order of this Court.

Count II, as amended, is also a Rule 23(b)(3) certified class action on behalf of all single family homeowners in Tamarac and alleges that the deed restrictions are unconscionable, unreasonable and unenforceable.

Count II is now before the Court upon cross-motions for summary judgment.

In Counts III and IV, a Rule 23(b)(3) certified subclass alleges that Defendant-Behring promised in its form contracts for purchase and sale to deliver deeds free and clear of all encumbrances. Plaintiffs allege that Behring breached its contract by delivering deeds encumbered by the Declaration of Restrictions which require rental and maintenance of the various recreational fa-

cilities. Behring does not deny that the contract called for the delivery of "free and clear" deeds, nor do they deny that the deeds as delivered were, in fact, encumbered.

Counts III and IV are likewise before the Court today upon cross-motions for summary judgment.

Two things cannot be over-emphasized in an understanding of this highly complex litigation which has been pending for almost seven years; the court file of which exceeds five feet in height:

(1) *This is not a condominium case.* This is an action involving separate, individually owned, single family dwelling in 31 different sections of the City of Tamarac.

(2) *The Behring Corporation is the sole defendant as to Counts I, II, III, IV and VI.* Count VII, the antitrust count, names Behring plus a large number of other defendants who have, or have had, an interest in the subject recreation leases.

Count II as originally filed in 1972 sought to remove the restrictions placed upon plaintiffs' deeds requiring Tamarac homeowners to make rental and maintenance payments on the recreational facilities. Paragraphs 24 and 25 of the original complaint allege that the restrictions should be declared unenforceable because they "purport to require affirmative acts" and as such "are unenforceable restrictions on alienation."

Count II further alleged that the "Behring Corporation or its subsidiaries" caused the restrictions to be placed upon the deeds.

Since the challenged deed restrictions "purport(ed) to require affirmative acts" of all homeowners in Tamarac, the Honorable Norman C. Roettger on July 3, 1974 certified Count II as a Rule 23(b)(3) class action consisting of all homeowners in Tamarac who are required to make recreation lease payments.

On October 18, 1978 plaintiffs moved for leave to file an amended Count II to clarify the issues presented. Leave was granted by Order dated October 24, 1978 and an amended Count II was filed on that date.

Amended Count II all but abandoned the original legal theory asserted (save for a passing reference in paragraph 22); instead it alleges that the deed restrictions should be declared unenforceable as "unconscionable, unreasonable, and violative of Florida law and public policy." Plaintiffs also assert that the restrictions are unenforceable as against homestead property since enforcement would violate the homestead provisions of the Florida Constitution; and that Behring was guilty of a conflict of interests, or self-dealing. Finally, amended Count II seeks an award of money damages to recover those sums previously paid pursuant to the allegedly illegal restrictions.

■ The Court will dispose of the homestead question first.

The Court finds that the deed restrictions are not unenforceable as potentially violative of the Florida Constitution "Homestead Provision", Article X, Section 4. *Bessemer v. Gersten* (Fla. February 8, 1979.)

■ As stated in *Point East One Condominium Corp., Inc. v. Point East Developers, Inc.,* 348 So.2d 32 (Fla. 3d DCA 1977),

"The possibility that a forced sale of a homestead might under some circumstances arise in the future does not form a basis for a declaration that the lease is unenforceable. *The prohibition against forced sale of a homestead is a prohibition against the use of process for that purpose. It does not invalidate the debt or the lien,* but under certain circumstances, merely takes priority over the debt or lien. See, for example, *Milton v. Milton,* 63 Fla. 533, 58 So. 718 (1912) and *Quigley v. Kennedy & Ely Insurance, Inc.,* 207 So.2d 431 (Fla.1968). We therefore, do not reach the question of whether the lien is exempted from the constitutional prohibition by the method of its creation at the time of the purchase of the condominium. See *Platt v. Platt,* 50 Fla. 594, 39 So. 536 (1905). The complaint gives no facts which would entitle any of the plaintiffs to a declaration of their possible rights in the future. See *Hunt v. Smith,* 137 So.2d 232 (Fla. 2d

DCA 1962), and *Perry v. Genung,* 163 So.2d 54 (Fla. 2d DCA 1964)." *Id.* at 36. (Emphasis supplied.)

As noted the sole defendant named in amended Count II is the Behring Corporation. Behring is *not* presently a lessee under any of the recreation leases in question. Indeed Behring divested itself of all interest under the leases long before amended Count II was filed.

■ Since plaintiffs cannot amend their complaint to allege a threatened lien foreclosure by Behring Corporation, leave to amend, as granted in *Point East One Condominium Corp., Inc. v. Point East Developers, Inc., supra,* will not be allowed here.

Nor can the Court permit leave to amend so as to name defendants with power to foreclose since the Court is without jurisdiction over any such claim.

The Court finds that plaintiffs' potential "homestead" defense to a potential lien foreclosure does not arise out of a "common nucleus of operative facts" giving rise to this Court's jurisdiction over Count VII, the Sherman Antitrust count, *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Also this Court has no desire to create "needless friction in federal-state relationships" by passing upon an undecided issue of state constitutional construction. *Edwards v. Sammons,* 437 F.2d 1240, 1243 (5th Cir. 1971).

Plaintiffs' allegations concerning unconscionability, unreasonableness and public policy are not as easily disposed of.

Count II as amended has its origin in three recent state court decisions. In *Fleeman v. Case,* 342 So.2d 815 (Fla.1976), the Florida Supreme Court held that the statute prohibiting rental escalation clauses in leases for recreational facilities or management contracts for condominiums may not be applied retroactively to such contracts whose effective date predated the effective date of the statute. By way of *dictum* the Court stated:

> Thus, although there is reference to the possibility that in some instances lease arrangements for individual unit owners may be unconscionable, inequitable or contain other deficiencies recognized in law as a basis for judicial invalidation, these matters are not considered or decided here.

By way of a footnote following the above quote, reference was made by the Court to Florida Statute 672.302, a provision of the Uniform Commercial Code, discussed infra. Following the decision in *Fleeman v. Case, supra,* the Supreme Court, in another condominium case, *Avila South Condominium Association, Inc. v. Kappa Corporation,* 347 So.2d 599 (Fla.1977), made the following reference to unconscionability:

> In affirming the dismissal of the count alleging violations of Section 711.66(5)(e), we do not preclude the plaintiffs on remand the possibility of stating an amended claim of unconscionability, independent of Section 711.66(5)(e).

Finally, in *Point East One Condominium Corporation v. Point East Developers, Inc.,* 348 So.2d 32 (Fla. 3d DCA 1977), the Third District Court of Appeal, discussing then Florida Statute 711.66(5)(e) stated that the statute does not set new standards or requirements for recreational facility leases noting that the Courts of the state have long since reserved the right to refuse to enforce unconscionable contracts. Quoting from *Peacock Hotel v. Shipman,* 103 Fla. 633, 138 So. 44 (1931), the court stated that where:

> . . . one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce . . . a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness.

On the basis of the foregoing, the Appeals Court directed the trial court to allow the plaintiffs leave to amend their complaint to attempt to allege a claim of unconscionability independent of Florida Statute 711.66(5)(e).

Out of this sow's ear of judicial dicta plaintiffs attempt to fashion the silk purse of the unenforceability of their contracts.

■ An unconscionable contract or an unconscionable bargain has been defined as one which:

> . . . No man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.

*Hume v. United States,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). The principle underlying the refusal of a court of equity to enforce unconscionable contracts is a principle which finds its roots in the *prevention of oppression and unfair surprise, not the disturbance of allocation of risks because of superior bargaining power.* Note 1, Uniform Commercial Code, Florida Statutes 672.2–302; *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3rd Cir. 1948).

■ Plaintiffs' memorandum in support of their motion for Summary Judgment filed November 9, 1978, by way of asterisk to a footnote, casually states that plaintiffs may rely upon F.S. 672.2–302, the section of Florida's enactment of the Uniform Commercial Code dealing with unconscionability.

Sec. 672.2–302, F.S., Unconscionable contract or clause, reads as follows:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Plaintiffs maintain that the UCC applies to leases of recreational facilities, or in the alternative that F.S. 672.2–302 merely codified Florida's common law concept of unconscionability.

Unfortunately for this position, F.S. 672.-2–102 states as follows:

Unless the context otherwise requires, this chapter applies to *transactions in goods*; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers. (Emphasis supplied)

Goods are defined as all things which are movable at the time of identification to the contract for sale. F.S. 672.2–105(1). *See e. g. Entron, Inc. v. General Cablevision of Palatka,* 435 F.2d 995 (5th Cir. 1970).

Some jurisdictions have expanded this definition to include the lease of goods where the nature of the lease is substantially analogous to a sale. See, "Application of Warranty Provisions of Uniform Commercial Code to Bailments," 48 ALR 3rd 668 (1972). Florida apparently is in accord with this view. *See, Johnson Equipment Co. v. United Air Lines, Inc.,* 238 So.2d 98 (Fla. 1970), although no Florida case directly on point has been discovered.

Plaintiffs alternate argument that F.S. 672.2–302 is applicable because it "merely *codifies* the common law concept of unconscionability", while perhaps true in other jurisdictions, is not in keeping with Florida Common Law. *See,* Florida Code Comments to Sec. 672.2–302 at 19 A. F.S.A. 171 by Sam G. Harrison, Jr. wherein it states:

> This section introduces an equity principle to the enforcement of contracts and the law of sales.

> Under Florida case law, buyers and sellers may contract as they please, no matter how hard the bargain, in the absence of fraud or deception. *Malsby v. Gamble,* 54 So. 766, 61 Fla. 310 (1911); *Squires v. Citrus Fruit Products, Inc.,* 191 So. 455, 140 Fla. 253 (1939). This Code section requires a court to find neither fraud nor deception in declaring a contract or clause unconscionable.

The Court finds, therefore, that F.S. 672.-2–302 is not directly applicable to the

present case, although it may be helpful as a guide to the concept of "unconscionability" under Florida law.

Indeed, this appears to be the course dictated by the Florida Supreme Court in its recent condominium decision of *Fleeman v. Case,* 342 So.2d 815 (Fla.1976) wherein the Court noted that while F.S. 718.122 did not apply in an attempt to invalidate a recreation lease on the basis of unconscionability, "There is . . . the possibility that in some instances lease arrangements for *individual unit owners* may be unconscionable, inequitable or contain other deficiencies recognized in law as a basis for judicial invalidation." (Emphasis supplied.) *Id.* See also, *Avila South Condominium Association, Inc. v. Kappa Corp.,* 347 So.2d 599 (Fla.1977); *Point East One Condominium Corp. v. Point East Developers, Inc.,* 348 So.2d 32 (Fla. 3d DCA 1977) and *Commodore Plaza at Century 21 Condominium Association, Inc. v. Cohen,* 350 So.2d 502 (3 DCA 1877).

The leading UCC decision dealing with unconscionability, relied upon by all parties hereto, is *Williams v. Walker Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 350 F.2d 445 (1965). This was an action to replevy various household items purchased by appellant, Mrs. Williams. Appellant unsuccessfully argued to the trial court that it should refuse to enforce the contract if it found it to be unconscionable. The D.C. Circuit Court of Appeals, in reversing the two lower court decisions, held that trial courts, under common law, may refuse to enforce unconscionable contracts, and remanded the cause for findings as to unconscionability.

As the Court of Appeals noted:

Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties *together with* contract terms which are unreasonably favorable to the other party. (Emphasis added)

The dual requirements called for by *Walker* are the "absence of meaningful choice . . . *together with* contract terms which are unreasonably favorable to the other party."

The first requirement under *Walker,* "absence of meaningful choice", is determined by analyzing the respective bargaining powers of the contracting parties, and the ability of the particular contracting party, in light of his education, intelligence, or lack thereof, to understand the terms of the contract. *Williams v. Walker Thomas Furniture Co., supra; Morris v. Capitol Furniture & Appliance Co.,* 280 A.2d 775 (D.C. App.1971).

This is referred to as "procedural unconscionability."

The onerous contract term from which a party seeks relief is commonly referred to as "substantive unconscionability". *See e. g. Fleischmann Distilling Corp. v. Distillers Company Limited,* 395 F.Supp. 221 (S.D.N.Y.1975). *See also,* "In Defense of Unconscionability" 78 *Yale L.J.* 757 (1971); and "Consumer Protection under Art. II of the UCC" 29 *Ohio St.L.J.* 689 (1968).

■ A mere showing of unequal bargaining power alone will not establish a claim of unconscionability. "In Defense of Unconscionability", 78 *Yale L.J.* 757, 766–767. At most, it will only establish *procedural* unconscionability.

■ Likewise, as we shall see, price-value disparity alone, without more, is insufficient to establish unconscionability. *See, International Realty Associates v. McAdoo,* 87 Fla. 1, 99 So. 117 (1924); *Mobile America Corporation v. Howard,* 307 So.2d 507 (Fla. 1st DCA 1975); *Morris v. Capitol Furniture and Appliance Co.,* 280 A.2d 775 (D.C.App. 1971); and *Patterson v. Walker Thomas Furniture Co.,* 277 A.2d 111 (D.C.App.1971). *See also,* "Consumer Protection Under Article II of the UCC." 29 *Ohio St.L.J.* 689 (1968); "Walker Thomas Strikes Back: Comment on the pleadings and Proof of Price Unconscionability", 30 *Fed.B.J.* 308 (1971); and "Analyzing Unconscionability Problems", 117 *U.Pa.L.R.* 931 (1969).

At most, such proof serves only to establish "substantive unconscionability".

Plaintiffs attack the contract formation process as being fraudulent, deceptive and procedurally unconscionable in that they did not actually receive their deeds revealing the restrictions until after the actual closing of the real estate transaction. Plaintiffs also assert as fraudulent, deceptive and procedurally unconscionable Behring's failure to reveal fully the nature, extent and legal ramifications of the deed restrictions in its commercial advertisements.

That defendant Behring failed to disclose in its newspaper advertisements the legal ramifications of the deed restrictions does not rise to the level of fraud, unfair surprise, oppression, or procedural unconscionability.

All agree that all of the deed restrictions were recorded and were a matter of public record well prior to the closing of any of the individual real estate transactions. The plaintiffs have failed to disclose any facts which would establish their inability to determine the existence and legal ramifications of the restrictions prior to closing and accepting their deeds.

The Florida Legislature long ago enacted Chapter 695, F.S.A. et seq., to avoid and prevent the very claim herein asserted. The record is undisputed that all plaintiffs had either actual or constructive notice of the restrictions herein complained of. *See, Feemster v. Schurkman,* 291 So.2d 622 (Fla. 3d DCA 1974); *Tri-County Produce Distributors, Inc. v. Northeast Production Credit Assn.,* 160 So.2d 46 (Fla. 1st DCA 1964); *Vetzel v. Brown,* 86 So.2d 138 (Fla.1956); *Zaucha v. Town of Medley,* 66 So.2d 238 (Fla.1953); and *Rinehart v. Phelps,* 150 Fla. 382, 7 So.2d 783 (1942).

Furthermore, the record shows all plaintiffs were given deeds to their individual property. Each deed is a one page document printed in fairly large letters. Approximately one-half of each deed tells the purchaser that the property is subject to restrictions, the place of recording of the restrictions, and the nature of the restrictions. Indeed the pertinent portions state:

That said land is free of all encumbrances except the *restrictions,* reservations and servitudes of record, as recorded in Official Records Book 3620, pages 727 through 734 of the Public Records of Broward County, Florida, against the subject property *which require the payment of a monthly maintenance and recreation area charge by the Grantee; which said maintenance and recreation area charge does constitute a covenant running with the land* and which shall be binding upon all subsequent heirs, legal representatives, assigns and successors of the Grantee. (Emphasis supplied.)

All of the circumstances considered, it is patent that defendant Behring has not been guilty of fraud in the contract formation process as a matter of law. All of the restrictions were a matter of public record long prior to closing, and the individual deeds themselves specifically remind plaintiffs of their duty thereunder.

Since the Court concludes that plaintiffs have failed to establish "substantive" unconscionability, *infra,* thus failing to meet the second requirement of the *Williams* test—it is unnecessary to further explore the question of "procedural" unconscionability.

Plaintiffs' claim of substantive unconscionability is based on three theories: (1) Gross price-value disparity, i. e., excessive rents; (2) the onerous and oppressive effect of the escalator clause contained in the leases; and (3) the unconscionability of having their property subject to lien.

Considering the three theories in order, the Court finds that plaintiffs have totally failed to carry their burden of establishing a gross price-value disparity.

When there is an allegation of a gross price-value disparity, the Court must compare *the price actually being paid by the complaining party, to the price being paid by other similarly situated consumers in a similar transaction.* See, "Consumer Protection Under Article II of the UCC", 29 *Ohio S.St.L.J.* 689, 706 (1968).

■ In the case at bar, plaintiffs allege, for example, that Plaintiff-Wagner is required to pay ten dollars a month rent for the use of the recreation facilities provided for his community, which include, among other things, a recreation building and a swimming pool. (Parenthetically it should be noted that the ten dollar fee covers use of the facilities not only by plaintiff-Bennetts, but also covers such use by his family and guests.) Plaintiffs never proceed any further in establishing any price value-disparity at all, and there is no proffered evidence in this voluminous record to establish that the price being paid by plaintiffs grossly exceeds that being paid by other similarly situated consumers in a similar transaction.

Plaintiffs could have shown what was being charged for similar facilities at similar developments, or at condominiums or cooperative apartments, private clubs, similar privately owned neighborhood recreation facilities, private bath clubs, YMCA's or YWCA's, etc. In lieu of such proof-which they have the burden of presenting-Plaintiffs simply compare the total value of the rents being paid to the value of the property being used.

They maintain with much heat that the Declarations of Restrictions required an annual rental during the first year of operation that exceeded 25% of the appraised value of the leased facilities for the first tax year after the sale of the homes covered by the recreation lease.

For example, in 1971 in Mainlands 3, 256 homeowners each were obligated to pay $120 per year, or a total of $30,720 net rental, on a facility that had a 1971 assessed value of $80,930.

Likewise, in 1971 in Mainlands 5, 265 homeowners each were obligated to pay $120 per year, or a total of $31,800 net rental, on a facility that had a 1971 assessed value of $80,200.

What this argument overlooks is that plaintiffs are not buying the recreation facilities but are only leasing them, and that the assessed value of real property is only one of a myriad of factors to be considered in establishing rents.

Simply put the plaintiffs chief complaint seems to be that the lessor is making too much money.

Perhaps it is, but that does not lead to the conclusion that the contract in question is *substantively unconscionable* in the absence of a showing that the price being paid by plaintiffs is significantly higher than that being paid by other similarly situated consumers in similar transactions for similar facilities.

The percentage of return on defendants' capital investment is simply immaterial and irrelevant to the issue of whether or not the contract is unconscionable as between the parties.

The question is not "Is the lessor-seller making too much money?"; but rather "Is the lessee-buyer paying an amount grossly in excess of what others similarly situated are paying for the same thing?"

In other words, to quote *Williams* at page 450, " . . . [are] the terms of the contract so unfair that enforcement should be withheld."

Plaintiffs-Bennett, for example, presently pay $120.00 per year for the use of a facility which by their own admission had an *assessed* value *in 1971* of $80,930.

This rental fee of $120 a year for the facilities represents a rental fee of .0015 of the assessed value of the property leased.

■ A contract, fair when entered into, does not thereafter become unconscionable simply because a great many other persons enter into identical contracts with defendant thereby increasing defendants' profits.

Such a situation can never form the basis of a claim of substantive unconscionability.

■ Each of the transactions here involved was a separate transaction. Each of the parcels was conveyed by separate deed.

The test of "fairness" must be applied to the individual transactions—not to the sum of all the transactions taken as a whole.

So viewed, this Court cannot say these recreation leases constitute "[bargains that]

no man in his senses and not under delusion would make on the one hand, and as no honest, and fair man would accept on the other." *Hume v. United States,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1885).

■ The Court further finds as a matter of law that the cost of living index adjustment, or escalator clause, is not substantively unconscionable.

Cost of living index adjustment clauses are widely used in commercial contracts in an effort to maintain fiscal stability and to retain "real dollar" value to the price terms of long term contracts. The provision is a common one, and has been universally upheld and enforced. Indeed, the Federal government has recognized the efficacy of escalator clauses in tying Social Security benefits to the cost of living index, 42 U.S.C. § 415(i). Pension benefits and labor contracts negotiated by most of the major labor unions are other examples. That inflation, expected or otherwise, will cause a particular bargain to be more costly in terms of total dollars than originally contemplated can be of little solace to the plaintiffs.

■ Again, the test is whether the clause is unconscionable at the time the contract was entered into, not at some future point in time. *See, International Realty Associations v. McAdoo supra; Williams v. Walker Thomas Furniture Co., supra; Morris v. Capitol Furniture & Appliance supra;* and *Patterson v. Walker Thomas Furniture Co. supra.*

The plaintiffs may not resort to a court of equity to relieve themselves of a bargain fair when made but later determined to be unfair. Over a hundred years ago our Supreme Court in *Rutland Marble v. Ripley,* 10 Wall 339, 77 U.S. 339, 356, 19 L.Ed. 955, 961 (1870) stated:

It is not unconscionable because Ripley obtains a larger profit from it than was at first expected, or because the other party obtains less. Those were contingencies, the possibilities of which might have been foreseen. It could not have escaped the thought of the contracted

parties that the expense of quarrying might possibly increase. . . . Of that they took their chances . . . .. Mr. Frye, in his work on specific performance, Page 116, asserts that "the question of the hardship of a contract is generally to be judged at the time which it is entered into; that if it be then fair and just, it will be immaterial that it may, by the force of subsequent circumstances or a change of events, have become less beneficial to one party, except when these subsequent events have been in some way due to the party who seeks the performance of the contract.

If any other view were held no contracting party could rely upon his agreement. Financing based upon future performance would never be made; and, ultimately no belief in the certainty of commercial transactions would exist.

There is no allegation in this complaint that the cost of living clause was hidden. To the contrary, it stands out boldly in the Declaration of Condominium and the Lease, which were of record long before any of the transactions closed.

In *Montgomery Ward v. Annuity Board of Southern Baptist Convention,* 16 Wash. App. 439, 556 P.2d 552 (1976), the *landlord* had asserted that his lease should be rescinded or reformed as unconscionable for, as interpreted by the Court, it would impose a financial hardship upon him as the Lessor. The court held that the issue of conscionability was for it to determine, that there was no evidence of fraud or deception, and that the landlord alone created his problem by his failure to foresee the consequences of his voluntary bargain.

The parties are free to make a hard bargain for themselves. Subsequent changes of time will not result in their meeting of the minds being any the less.

The test is whether or not the clause is unconscionable at the time the contract was made. *Sinkoff Beverage Co. v. Joseph Schlitz Brewing Co.,* 51 Misc.2d 446, 273 N.Y.S.2d 364 (1966). Where a buyer is free to engage in comparative shopping a contract will not be held unconscionable on the

grounds of price alone. In *Morris v. Capitol Furniture and Appliance Co.*, 280 A.2d 775 (D.C.App.1971) suit was instituted to recover a balance due for furniture purchased. Defendant counterclaimed alleging that fair value had been paid and that the contract terms were unconscionable. The judgment for the plaintiff was affirmed, the Court noting that since the buyer had been free to indulge in comparative shopping she was free to enter into the contract and could not later depend on a court of equity to extricate herself from the bargain she made.

■ The plaintiffs' additional complaint that the leases are unconscionable since they provide for the imposition of a lien upon their property for non-payment of the obligations created by their deeds to the property is likewise without merit. It is so well known as to require no citation of authority that liens may be placed on land to secure payment of a debt. Tax liens, special improvement liens, etc. are quite common. Landlords liens were known at common law. Chapter 713, Fla.Stats., the Mechanics Lien Law, provides for liens on real property under circumstances far less equitable to the homeowner than those which exist here.

Clearly the fact that a lien may be imposed on real property to secure a debt cannot form the basis of a claim of unconscionability.

■ Plaintiffs attempt to obtain a judgment for money damages for sums previously collected by Behring Corporation under the recreation leases must fail in any event, regardless of a finding of unconscionability. While plaintiffs may be able to recover monetary damages for fraud and/or intentional misrepresentations, as alleged in Counts I and VI, the equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages. C.F. "Exemplary Damages: Unconscionable Practices." David A. Rice, 55 *Iowa Law Rev.* 307, 328 (1969).

The Court finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse *enforcement* of the unconscionable section or sections of the contract so as to avoid an unconscionable result. See, *Dale v. Jennings,* 90 Fla. 234, 107 So. 175 (1925); *Peacock Hotel v. Shipman,* 103 Fla. 633, 138 So. 44 (1931); *Horne v. Sewell,* 118 So.2d 643 (Fla. 1st DCA 1960); *Weeks v. Pratt,* 43 F.2d 53 (5th Cir. 1930); Florida Statute 672.2–302(1); and 5 *Corbin on Contracts* § 128, Unconscionable Bargains.

■ Plaintiffs have apparently abandoned the original point raised by Count II prior to amendment to the effect that a deed restriction which "purports to require affirmative acts" is illegal as a matter of law. Nevertheless, the Court has reviewed it and finds it is without merit. *See Wood v. McElvey,* 296 So.2d 102 (Fla. 2d DCA 1874) and *Sloane v. Dixie Gardens, Inc.,* 278 So.2d 309 (Fla. 2d DCA 1973); *Hagan v. Sabal Palms, Inc.,* 186 So.2d 302 (Fla. 2d DCA 1961). *See e. g. Seagate Condominium Assoc. v. Duffy,* 330 So.2d 484 (Fla. 4th DCA 1976) and *Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180 (Fla. 4th DCA 1975).

Plaintiffs final claim under amended Count II of the Complaint alleges that the deed restrictions were imposed as a result of self-dealing between city officials and Defendant-Behring.

This contention has been raised by a number of other litigants in state court and has been consistently rebuffed. *See e. g., Al J. Schechter, Trustee, v. George Westerman, et al.,* No. 72–5740 (Fla. 17th Cir. 1973) (Unreported decision), app. dis: 280 So.2d 739 (Fla. 4th DCA 1973). (Schechter is one of the Count VII defendants in this case.)

■ In Counts III and IV plaintiffs allege a general breach of contract. The undisputed facts establish that some purchasers executed a form contract for purchase and sale prepared by the defendant, Behring Corporation, which provided for the delivery of deeds to the purchasers

"free and clear" of all encumbrances. The parties agree that some of the deeds subsequently delivered at or after closing were not "free and clear" of all encumbrances being subject to the restrictions complained of.

The defendant asserts that Counts III and IV are barred by the doctrine of merger.

This Court agrees.

It is a general rule that preliminary agreements and understandings relative to the sale of property merge in the deed by which the original contract becomes executed. *See, Stephan v. Brown,* 233 So.2d 140 (Fla. 2d DCA 1970); *Milu v. Duke,* 204 So.2d 31 (Fla. 3d DCA 1967); *St. Clair v. City Bank & Trust Co.,* 175 So.2d 791 (Fla. 2d DCA 1965); *Volunteer Security Co. v. Dowl,* 159 Fla. 767, 33 So.2d 150 (Fla.1947); *Graham v. Commonwealth Life Insurance Co.,* 114 Fla. 585, 154 So. 335 (1934); *White v. Crandall,* 105 Fla. 70, 143 So. 871 (1932); and *Gabel v. Simmons,* 100 Fla. 526, 129 So. 777 (Fla.1930). Thus, it has been held that the contract for purchase and sale will merge with the grantor's deed and the latter will control with respect to warranties of sale. *See, generally,* 10 *Fla.Jur.,* Deeds § 159; and Williston on Contracts § 1399A (Jaeger 3rd ed. 1968).

On point is the case of *Stephen v. Brown, supra,* wherein the plaintiff entered into a contract with the defendant to purchase real estate. The contract for purchase and sale provided that the defendant-grantor would deliver to the plaintiff-purchaser a deed free and clear of all encumbrances. Thereafter defendant failed to deliver a deed free and clear, but instead delivered a deed that was encumbered. The plaintiff, subsequent to accepting the encumbered deed, filed an action to have the deed set aside. The trial court dismissed the plaintiffs' complaint finding that the doctrine of merger controlled. On appeal the trial judge was affirmed, the Second District Court of Appeals holding that " . . . the contract for sale of the property became merged in the . . . deed [and] the latter controlled with respect to warranties

of sale, and that absent such warranty in the deed the [seller] was under no duty or obligation with respect to any warranty against encumbrances on the property after the deed had been accepted by the purchaser." *Id.* at 141.

There are two primary exceptions to the merger doctrine.

One, the doctrine will not operate to bar collateral agreements which would not normally be included by the terms of the deed. *See, Soper v. Stine,* 184 So.2d 892 (Fla. 2d DCA 1966); *Milu, Inc. v. Duke,* 204 So.2d 31 (Fla. 3d DCA 1967).

Two, the doctrine of merger will not bar recovery where acceptance of the non-conforming deed was procured by fraud. *See, St. Clair v. City Bank and Trust Company,* 175 So.2d 791 (Fla. 2d DCA 1965). Neither exception applies to the case at bar.

While the plaintiff does allege fraud (indeed, Counts I and VI are grounded upon fraud); they do not allege a fraudulent inducement in procuring the acceptance of a deed encumbered with restrictions.

In *White v. Crandall, supra,* the purchasers of property attempted to avoid the application of the merger doctrine by alleging fraudulent misrepresentations antedating the conveyance of the property. The purchaser alleged that sellers' oral statements prior to the conveyance concerning encumbrances were fraudulently made.

The Florida Supreme Court held that the plea was defective because the restrictions were contained in the deed transferred to the plaintiff. The Court noted that the restrictions being contained in the deed, and plaintiff having accepted the deed, "[t]he transaction became an *executed* contract for the sale of land. The purchase was completed, and the defendant accepted the title which on the public record was burdened by the restrictions and the easement." *Id.* at P. 879.

"Where the defendant has completed the purchase, [and] accepted his deed, the trans-

702

action is closed, and the purchaser is confined to his action for breach of the covenant." *Id.*

Plaintiffs in this lawsuit are attempting to allege the same type of fraud which was rejected by the Court in *White v. Crandall.* The plaintiff states that the clause in the contract for purchase and sale promising the delivery of a deed free and clear constitutes a fraudulent misrepresentation because the defendant never intended to deliver a deed free and clear.

There are, however, no viable allegations of fact establishing fraudulent misrepresentations inducing the acceptance of a deed with restrictions. The restrictions were filed of record and appeared on the face of the deeds delivered and accepted. The plaintiffs' remedy would have been to refuse to close, accept the deed, and sue on the contract. Failing this, plaintiffs' sole remaining remedy is to sue for a breach of covenant in the deed which is not possible since the exception to the covenant is clearly stated.

■ In further support of defendant-Behring's Motion for Summary Judgment, the Court agrees that plaintiffs have failed to join Rule 19 indispensable parties as to amended Count II. *See Baten v. Nona-Fletcher Mineral Co.,* 198 F.2d 629 (5th Cir. 1952); *Stewart v. United States,* 242 F.2d 49, 51 (5th Cir. 1957); *Broussard v. Columbia Gulf Transmission Co.,* 398 F.2d 885 (5th Cir. 1968); *Glenny v. American Metal Climax, Inc.,* 494 F.2d 651 (10th Cir. 1974).

Since the Court's review of amended Count II convinces the Court that plaintiffs cannot prevail, it will not require the futile gesture of joining as party defendants those unjoined parties who presently have interests in the recreation leases before the Court. The Court deems the issue moot.

Finally, and perhaps most importantly, the Fourth District Court of Appeal of Florida in *Diamond v. Woodlands Homeowner's Assn., Inc.,* 348 So.2d 8 (Fla. 4th DCA 1977) specifically passed upon many of the very questions raised by plaintiffs' amended Count II, and: (1) specifically upheld the

validity of *the very recreation leases here in question* ; (2) upheld the validity of their liens; and (3) upheld the validity of the rent increases resulting from an increase in the cost of living.

Indeed, most of the allegations of amended Count II, with the exception of the claim of unconscionability, have been unsuccessfully litigated and relitigated and infinitum by other Tamarac homeowners in the Circuit Court of the Seventeenth Judicial Circuit of Florida, in and for Broward County. This federal litigation for the most part merely seeks to rehash issues long well settled in state court. *See e. g., Al J. Schechter, Trustee v. George Westerman, et al., supra,* which specifically dealt with the doctrine of merger and applied it to defeat the very claims here asserted under Counts III and IV of plaintiffs' complaint.

The foregoing considered the Court finds as follows:

(1) That the deed restrictions encumbering plaintiffs' property are not unenforceable as potentially violative of Article X, Section 4, of the Florida Constitution.

(2) That the recreation leases in question are not substantively unconscionable.

(3) That the recreation leases in question are not unconscionable.

(4) That the recreation leases in question are not oppressive, unreasonable, contrary to public policy, nor were they the result of fraud, deception, and misrepresentation on the part of defendant-Behring Corporation.

(5) That the cost of living index adjustment, or escalator clause, is valid and is not unconscionable.

(6) That the provision that a lien may be imposed upon plaintiffs' property for nonpayment of the obligations created by the deeds is valid, and is not unconscionable.

(7) That the deed restrictions complained of are valid.

(8) That, assuming arguendo, that there was fraud in the inducement of the execution of the contracts of purchase and sale, such claims are barred by the operation of the doctrine of merger.

Accordingly, the Court finding that there is no genuine issue of material fact, and that the defendant is entitled to judgment as a matter of law, it is

ORDERED AND ADJUDGED as follows:

1. That Plaintiffs' Motion for Summary Judgment as to Amended Count II be and the same is hereby denied.

2. That Plaintiffs' Motion for Summary Judgment as to Count III be and the same is hereby denied.

3. That Plaintiffs' Motion for Summary Judgment as to Count IV be and the same is hereby denied.

4. That Defendant, Behring Corporation's, Motion for Summary Judgment as to amended Count II be and the same is hereby granted.

5. That Defendant, Behring Corporation's, Motion for Summary Judgment as to Count III be and the same is hereby granted.

6. That Defendant, Behring Corporation's, Motion for Summary Judgment as to Count IV be and the same is hereby granted.