480 So.2d 1324 (1985)
Alan and Nancy GARRETT a/k/a Alan and Nancy Gershbein, Appellants,
v.
Anna C. JANIEWSKI, et al., Appellees.
No. 84-1186.
District Court of Appeal of Florida, Fourth District.
September 25, 1985.
Rehearing and Rehearing Denied January 29, 1986.
Margaret Cooper and Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, for appellants.
Mark A. Cullen of Cullen & Szymoniak, P.A., Lake Worth, for appellees.
Rehearing and Rehearing En Banc Denied January 29, 1986.
DOWNEY, Judge.
Appellants, Alan and Nancy Garrett, a/k/a Gershbein, (Owners), appeal from a final judgment entered in favor of appellees, forty-six tenants in a mobile home park (tenants), in an action for declaratory and injunctive relief and damages arising out of rental agreements for mobile home lots.
In May 1981 owners purchased a mobile home park containing sixty-five mobile home lots for $800,000. At the time of the purchase the prior owners were charging $65 per month for most of the lots and $75 for the larger water view lots. In addition, there was a charge for persons other than the lessee tenants who lived on the premises. Soon after acquiring the property, owners gave the tenants written notice of an increase in rent effective June 1, 1981, to $125 and $135 per month, as well as an increase in the charge for any additional persons residing on the lot. The rent increase was paid by the tenants without any legal controversy and the owners used the increase to make substantial improvements in the park. Another stated reason for the increase was the high monthly loan obligation. The owners did not live on the premises but employed a manager who handled complaints and problems as they occurred or referred them to the owners.
Two years after the June increase, on April 1, 1983, owners increased the rent an additional $10 per month to $135 and $145. That increase precipitated this litigation in which the tenants alleged the June 1981 and April 1983 rent increases were unconscionable, *1325 the owners had failed to maintain the premises, and they had charged illegal entrance and exit fees.
Only nine of the tenants testified at trial. In lieu of answering financial interrogatories, the tenants stipulated that they all could afford to pay the increases. Furthermore, the evidence reflects that for forty-three of the tenants, many of whom are Canadians, the mobile home is their seasonal or second home. There was expert testimony adduced by both sides as to the fair rental value of the lots in question as well as the rent being paid by tenants in other comparable mobile home parks. The tenants' expert testified that the rental of $65 and $75 when owners purchased was well below market value. He further opined that, when owners increased the rental to $125 and $135 in June 1981, the fair market value was $100 and $110, and when the rent was increased to $135 and $145 in April 1983, the fair market value was $110 and $115. The owners' expert and the selling broker testified that the rents being charged on both occasions, June 1981 and April 1983, were fair market value or below. In addition, some of the tenants who refused to join in the suit testified that the rents being charged were fair.
Based on the evidence adduced, the trial judge made detailed findings of fact, among which the following are the most pertinent ones in the light of the points on appeal: 1) "The mobile home units in the park are virtually unmovable, most have attached cabanas or screen rooms. Also, because of their age, most of the mobile homes cannot be relocated in another rental park, because other rental park owners will not accept units of this age into their park." 2) Since March 1981, twenty-one mobile homes have been sold in the park  four having been sold since December 1982. 3) The fair market rental value of the units in the park as of June 1981 was from $110 to $120. In April and October 1983 the fair market rental value was from $120 to $130. 4) During recent years, Martin County park owners have experienced as much as a seventy-eight percent increase in trash pickup costs in a given year and a thirty-three and one-third percent increase in taxes. 5) The owners had a net operating loss of $981 in 1983 and a net profit in 1982 of $29,000, exclusive of depreciation. 6) Owners made many improvements on the property since 1981, including well pumps, sewer lines, electrical service, and other facilities. 7) Although there were complaints by tenants concerning the length of time it took for owners to make needed repairs, there was no substantial noncompliance with ordinary services and amenities. The problems, such as they were, were considered in fixing the value of the property.
Based upon those and other findings, the trial court concluded that the rents charged by owners were unconscionable. In making this determination, the court stated that it was utilizing the two pronged test for unconscionability, requiring both procedural and substantive unconscionability. See Bennett v. Behring Corporation, 466 F. Supp. 689 (S.D.Fla. 1979), appeal dismissed 629 F.2d 393 (5th Cir.1980); Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. 4th DCA), rev. denied 409 So.2d 1094 (1981). The court concluded there was procedural unconscionability "because of the relative unfair bargaining position of the owners and the tenants." The court was of the opinion that the tenants could not "realistically" move their mobile homes, and stated: "Even if they could, there would be no place to which they could move their home. The other option of selling their home and purchasing a new home in a different park would also be unduly burdensome." The court opined that "[e]ither option presents substantially greater problems than simply removing oneself from an apartment." The court next concluded that there was substantive unconscionability because there was proof that the rent charged for each lot as of June 1981, April 1983, and October 1983, was fifteen dollars above the fair market rental value. The judgment held that the tenants were entitled to credit for the overpayments during the relevant periods and provided that reduction in future rents could be used to pay the overcharges. Finally, the trial court held that owners were *1326 not guilty of charging illegal entrance and exit fees but that they were guilty of illegal charges as to the persons other than tenants who stayed in the mobile homes.
In the three main points on appeal the owners contend the trial court erred in 1) determining that the rent increases were substantially unconscionable, 2) determining that the rent increases were procedurally unconsionable as to those tenants who moved into the park after the rent increases were effective and as to those tenants for whom no evidence of circumstances was presented, and 3) rolling back the rent for the one and one half years prior to filing suit. We choose not to discuss the fourth point involving a finding of fact regarding the condition of the park since there was evidence to support the court's finding.
In resolving the question of unconscionability, the trial court utilized the two pronged test described in Kohl v. Bay Colony Club Condominium, Inc. and Bennett v. Behring, and the owners have presented the first two points on appeal in the context of that test. While this test is not a rule of law, it is an effective tool in deciding the question of unconscionability, Steinhardt v. Rudolph, 422 So.2d 884 (Fla. 3d DCA 1982), and this court has held that there must be a coalescing of the two elements, procedural and substantive unconscionability, before a case for unconscionability is made out. Kohl. For a more exhaustive resume of the two aspects of the test, reference is made to Kohl, Behring and Judge Hubbart's excellent opinion in Steinhardt.
Substantive unconscionability requires proving that the terms of the contract are unreasonable and unfair, Kohl; it requires a showing of commercial unreasonableness, Johnson v. Mobil Oil Corporation, 415 F. Supp. 264 (E.D.Mich. 1976); the terms must be unreasonably favorable to one party, Williams v. Walker-Thomas Furniture Company, 350 F.2d 445 (D.C. Cir.1965). Proof of price-value disparity is not enough. E.g., Behring, 466 F. Supp. 689; State v. De Anza Corporation, 416 So.2d 1173, 1175 (Fla. 5th DCA 1982). As the court stated in Behring, the question is: "Is the lessee-buyer paying an amount grossly in excess of what others similarly situated are paying for the same thing?" 466 F. Supp. at 698. It must be shown that the rental being paid by the complaining tenants grossly exceeds that being paid by similarly situated tenants for lots of equal value. Behring. Finally, as the court recognized in Steinhardt:
It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.
422 So.2d at 890.
Here, the trial court found that the rental being charged by owners was "above the fair market rental value for lots in Skyline Park"; it was $15 per month per unit above fair market rental value. Thus, we have a finding on controverted evidence that the tenants were being charged $.50 per day, $15 per month, or approximately $180 per year more than the market rental value of the lots. This prompts the rhetorical question: Is that difference unconscionable?; does that difference constitute a sum that grossly exceeds what other tenants similarly situated are paying? We think not. After all, we must remember that we are dealing with the voiding of a contract for unconscionability, which means we are dealing with a contract that no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other. Behring, 466 F. Supp. 689; Swanson v. Hempstead, 64 Cal. App.2d 681, 149 P.2d 404 (1944); Steinhardt, 422 So.2d 884; Terre Haute Cooperage v. Branscome, 203 Miss. 493, 35 So.2d 537 (1948). Synonyms for the term unconscionable include "shocking to the conscience" and "monstrously harsh." E.g., Jeffery v. Weintraub, 32 Wash. App. 536, 648 P.2d 914 (1982); Montgomery Ward & Company, Inc. v. Annuity Board of Southern *1327 Baptist Convention, 16 Wash. App. 439, 556 P.2d 552 (1976).
In view of the foregoing, we conclude the error suggested in the owners' first point on appeal requires reversal of the judgment. Lest we be accused of substituting our judgment for that of the trial judge on a fact question, we would point out that the question of unconscionability is one of law for the court. Aristek Communities, Inc. v. Fuller, 453 So.2d 547 (Fla. 4th DCA 1984); Central Ohio Co-operative Milk Producers v. Rowland, 29 Ohio App.2d 236, 281 N.E.2d 42 (1972); Zicari v. Joseph Harris Company, 33 A.D.2d 17, 304 N.Y.S.2d 918 (1969); Haugen v. Ford Motor Company, 219 N.W.2d 462 (N.D. 1974); Schroeder v. Fageol Motors, 86 Wash.2d 256, 544 P.2d 20 (1975). Of course, the court's decision is based upon the factual circumstances surrounding the transaction in question. Jeffery, 648 P.2d 914; Christiansen Brothers, Inc. v. State, 90 Wash.2d 872, 586 P.2d 840 (1978). While we accept the trial court's findings of fact in this case as correct, we are unable to conclude that those facts demonstrate substantive unconscionability.
Although by their second and third points on appeal the owners contend error was committed in finding procedural unconscionability and in ordering a refund of the rent paid that exceeded the fair rental value of the lots, we need not treat them in any detail because we conclude the trial court erred in finding substantive unconscionability. Behring.
We note in passing that there appears to be a serious question involved in the court's findings of procedural unconscionability because there is no evidence proving the circumstances of most of the tenants. We held in Kohl that the prerequisites for procedural unconscionability are too individualized to permit a class action. Further, as stated by the court in State v. De Anza, 416 So.2d 1173, 1175 (Fla. 5th DCA 1982): "Procedural unconscionability relates to the individualized circumstances surrounding each contracting party at the time of contracting and cannot be established as a general proposition for a whole range of contracts merely containing similar terms between various persons." There appears to be inadequate proof of the circumstances surrounding many of the tenants in the instant case. The tenants rely upon an alleged stipulation to bridge that gap, but the stipulation is denied by the owners and none appears in the record. Owners concede only that there was a stipulation that all the tenants would not have to testify to conditions of the property. This, of course, does not furnish the proof needed for the individuals' circumstances, i.e., their respective bargaining powers and their abilities in light of their education, intelligence, or lack thereof, to understand the terms of the contract.
The third point regarding the refund as damages also appears to present a serious problem. The authorities all seem to hold that damages are not recoverable under the language of section 83.754, Florida Statutes (1983). The wording of that statute is virtually identical with the wording of section 2-302 of the Uniform Commercial Code,[1] which is held not to authorize recovery of damages. Cowin Equipment Company, Inc. v. General Motors Corporation, 734 F.2d 1581 (11th Cir.1984); Behring; 15 S. Williston, A Treatise on the Law of Contracts § 1763A (3d ed. 1972). However, section 83.761, Florida Statutes (1983), provides for the recovery of damages by either a mobile home owner or park owner for noncompliance by the other party with the lot rental agreement or the provisions of this statute. We leave unresolved the question of whether a finding of unconscionability gives rise to damages, such as refunding overpayments, under that section.
In view of the foregoing, the judgment appealed from is reversed and the cause is remanded to the trial court with directions to enter judgment for owners/appellants.
REVERSED AND REMANDED, with directions.
HURLEY and BARKETT, JJ., concur.
NOTES
[1] U.C.C. section 2-302 is codified in Florida as section 672.302.