521 So.2d 282 (1988)
B.J. PEARCE, et al., Petitioners,
v.
DORAL MOBILE HOME VILLAS, INC., Respondent.
No. 87-3091.
District Court of Appeal of Florida, Second District.
March 4, 1988.
John T. Allen, Jr. and Christopher P. Jayson of John T. Allen, Jr., P.A., St. Petersburg, for petitioners.
Keith C. Tischler and David D. Eastman of Parker, Skelding, McVoy & Labasky, Tallahassee, for respondent.
PER CURIAM.
Petitioners are tenants of a mobile home park who are presently involved in a suit *283 against the park owner based on a claim of unconscionable rent increases. They seek to overturn an order of the circuit court which permits the respondent to discover certain information about the personal finances and assets of each plaintiff.[1] Petitioners contend that the information requested is irrelevant to any of the issues involved in a suit of this type. We agree and grant the petition for writ of certiorari.
For several years the legislature and courts of this state have recognized special circumstances peculiar to mobile home park tenants which distinguish them from other types of renters. "Unlike the tenant in an apartment house who, upon eviction, merely has personal possessions to move, the mobile home tenant, renting space in a lot or park, has to incur additional expenses and problems in having the mobile home itself transported to another site upon eviction." Stewart v. Green, 300 So.2d 889, 892 (Fla. 1974). As a result the legislature has enacted the Florida Mobile Home Act, Chapter 723, Florida Statutes, which one court has justifiably dubbed the "mobile home park tenant's bill of rights." Lemon v. Aspen Emerald Lakes Associates, Ltd., 446 So.2d 177, 180 n. 2 (Fla. 5th DCA 1984). Among its provisions is the section under which this suit is brought, which authorizes the court to refuse to enforce or limit the application of any rental agreement or provision thereof which it deems unconscionable. § 723.033, Fla. Stat. (1987).
Although the legal concept of unconscionability of contract provisions has been described as "flexible and chameleon-like"; Steinhardt v. Rudolph, 422 So.2d 884, 890 (Fla. 3d DCA 1982), petition for review denied, 434 So.2d 889 (Fla. 1983); in the context of rent increases it is generally accepted that two factors must coalesce. See Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. 4th DCA), petition for review denied, 408 So.2d 1094 (Fla. 1981). First, the tenant/plaintiff must demonstrate the existence of "procedural unconscionability," elsewhere defined as "an absence of meaningful choice." Bennett v. Behring Corp., 466 F. Supp. 689, 696 (S.D.Fla. 1979). Among the criteria which may be considered in reaching this determination are the parties' age, level of education, business acumen, and relative bargaining power. Johnson v. Mobil Oil Corp., 415 F. Supp. 264 (E.D.Mich. 1976). Next, there must be a demonstration of "substantive unconscionability," that is, that the contract terms are "unreasonably favorable to the other party." Bennett.
That a mobile home park may charge rents in excess of the value of its lots, and thereby "mak[e] too much money on its capital investment," does not alone signify substantive unconscionability. State v. DeAnza Corp., 416 So.2d 1173, 1175 (Fla. 5th DCA), petition for review denied, 424 So.2d 763 (Fla. 1982). There must also exist some showing of disparity between the rent charged by the defendant and those paid "by another similarly situated consumer in a similar transaction for a similar facility." DeAnza. In Appel v. Scott, 479 So.2d 800, 801 (Fla. 2d DCA 1985), this court held that a complaint stated a cause of action where rent increases were "in excess of the rental value of the property ... not founded upon any legitimate financial basis ... arbitrary, capricious, and confiscatory ... [and] grossly excessive when compared with rents charged by similarly situated mobile home parks in the county."
In support of its discovery request the respondent suggests that one's ability to pay a rent increase, or, alternatively, his ability to pack up and go someplace else rather than acquiesce in the increase, is a *284 material consideration in determining whether such an increase is unconscionable. However, we cannot believe that such a consideration should support an otherwise arbitrary rent increase any more than the profitability of a given park should disallow raising the rent. The relative disadvantage of the mobile home owner vis-a-vis his landlord has little to do with the net worth of either, and very much to do with the demonstrable burden of pulling up stakes and a potential for economic blackmail that is equally abhorrent whether applied to the wealthy retiree or to the social security pensioner or the laborer of limited means.
As an alternative, respondent asserts that petitioners have failed to demonstrate how the circuit court's order subjects them to the type of "irreparable injury" that would justify this court's intervention by certiorari. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987). Although there is dicta within the Martin-Johnson opinion arguably supportive of respondent's position, we must conclude that the present case is distinguishable in principle and thus not governed by Martin-Johnson.
The precise issue before the court in Martin-Johnson was the propriety of certiorari review of an order denying a motion to dismiss or strike a claim for punitive damages. Generally, orders on motions to dismiss or strike claims do not qualify for review by certiorari. See, e.g., Gordons Jewelry Co. of Florida, Inc. v. Feldman, 351 So.2d 1117 (Fla. 4th DCA 1977). However, because a claim for punitive damages is usually accompanied by demands for discovery relating to the defendant's finances, the use of certiorari has been somewhat liberalized in cases where the claim for punitive damages may reasonably be considered spurious and calculated to harass the defendant or coerce a settlement. In order to decide the propriety of a discovery order related to a claim for punitive damages, it may be difficult to avoid consideration of the viability of the underlying claim itself. See, e.g., Bradenton Mall Associates v. Hill, 508 So.2d 538 (Fla. 2d DCA 1987). Nevertheless, the supreme court in Martin-Johnson criticized such expanded review as "creating a new category of non-final orders reviewable on interlocutory appeal." 509 So.2d at 1099. Noting that in certiorari proceedings an order may be quashed only for "certain fundamental errors," the court expressed its opinion that in many cases "the harm that may result from discovery of a litigant's finances is [not] the type of `irreparable harm' contemplated by the standard of review for certiorari." Id.
The handful of published decisions which have relied upon Martin-Johnson appear to have construed the abovequoted language broadly. In Short v. Fleetwood Motor Homes of Pennsylvania, Inc., 511 So.2d 747 (Fla. 5th DCA 1987), the court held that Martin-Johnson precluded certiorari review of an order compelling discovery of certain financial information despite their agreement that the requested discovery was irrelevant to any issue presented by the case. In at least one instance Martin-Johnson has been extended beyond a party's finances to other types of records, despite the district court's agreement that the compulsion of these items represented a departure from the essential requirements of law. Mazda Motor Corp. v. Quinn, No. 87-332 (Fla. 1st DCA November 5, 1987) [12 F.L.W. 2537]. We find only one case in the wake of Martin-Johnson which overturns an order compelling disclosure of financial records, here because the trial court prematurely allowed certain financial discovery in a suit for accounting prior to the establishment of any right to an accounting. Zebouni v. Toler, 513 So.2d 784 (Fla. 1st DCA 1987). In this instance the appellate court cautioned that it was making an exception based upon "the salutary purpose of maintaining the integrity of the bifurcated nature of such proceedings." 513 So.2d at 786.
With all due respect to our sister courts, however, we do not believe that Martin-Johnson was intended to foreclose entirely the certiorari review of discovery orders involving a party's financial affairs. The supreme court observed that the Martin-Johnson *285 discovery request did not intrude into areas of privilege, trade secrets, or work product, and stated, "We cannot view the harm suffered by this disclosure as significantly greater than that which might occur through discovery in any case in which it is ultimately determined that the complaint should have been dismissed." 509 So.2d at 1100. Instead, the court found that the greatest potential injury was the "expense of time and money" that inevitably accompanies "[l]itigation of a non-issue" and which has never been recognized as sufficient to justify relief by certiorari. Id.; See also, Wright v. Sterling Drugs, Inc., 287 So.2d 376 (Fla. 2d DCA 1973), cert. denied, 296 So.2d 51 (Fla. 1974). In fact, "the party injured by the erroneous interlocutory order may eventually win the case, mooting the issue, or the order may appear less harmful in light of the development of the case after the order." 509 So.2d at 1100.
We do not perceive from this holding an intent on the part of the supreme court to abandon its prior affirmation that "the trial court should always be sensitive to the protection of a party from harassment and from an overly burdensome inquiry," even where financial matters may be relevant to some degree. Tennant v. Charlton, 377 So.2d 1169, 1170 (Fla. 1979). We find just such a situation in the present case, where requiring from each and every one of the numerous plaintiffs the production of irrelevant and highly personal information presents an undue burden disproportionate to any conceivable benefit to respondent. In fact this type of discovery request, if encouraged, might tend to produce an unwarranted chilling effect on future lawsuits of this type.
The petition for writ of certiorari is granted and this case is remanded to the circuit court for further proceedings consistent with this opinion.
RYDER, A.C.J., and CAMPBELL and SCHOONOVER, JJ., concur.
NOTES
[1] Among the discovery requests, propounded by means of interrogatories, were instructions to "itemize all sources of income, including, but not limited to, wages, pensions, governmental benefits, dividends, rental income or investment income, specifying the source, the amount of income received and the frequency that said income is received," to state the amount of income reported for income tax purposes for the years 1981 through 1985, and to "list all assets and items of personal property of a value in excess of $1,000 owned by you including, but not limited to, personal property, stocks, bonds, bank accounts, ownership interests in property or business, also stating the value of each item." The circuit court's order denying petitioners' motion for protective order narrows the scope of discovery only to the extent of limiting it to "the prior three calendar years" and "present fair market value."