558 So.2d 1039 (1990)
Douglas BELCHER, D/B/a Club Wildwood Mobile Home Village, Appellant,
v.
George KIER, et al., Appellees.
No. 88-02373.
District Court of Appeal of Florida, Second District.
February 2, 1990.
Rehearing Denied April 6, 1990.
*1040 Alan C. Sundberg, Sylvia H. Walbolt, and Paul E. Lund of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
John T. Allen, Jr., and Christopher P. Jayson of John T. Allen, Jr., P.A., St. Petersburg, for appellees.
Jack M. Skelding, Jr., and David D. Eastman of Parker, Skelding, Labasky and Corry, Tallahassee, for amicus curiae Florida Manufactured Housing Ass'n, Inc.
Lee Jay Colling and Thomas Presnell, Jr., of Lee Jay Colling & Associates, P.A., Orlando, for amicus curiae Federation of Mobile Home Owners of Florida, Inc.
PER CURIAM.
The appellees, mobile home park tenants, brought a suit for declaratory judgment against the appellant, the park owner, alleging that rental increases for the years 1982 through 1988 were unconscionable and requesting relief pursuant to the Florida Mobile Home Act, chapter 723, Florida Statutes (1986). The trial court found that the increases were unconscionable and ordered the rental increases reduced. We reverse.
Because the determination of unconscionability is a matter of law, Garrett v. Janiewski, 480 So.2d 1324 (Fla. 4th DCA 1985), we view the evidence from the same vantage point as the trial court. In determining the "chameleon-like" nature of unconscionability, Steinhardt v. Rudolph, 422 So.2d 884, 890 (Fla. 3d DCA 1982), several courts have discussed the applicable law, including this court, B.J. Pearce v. Doral Mobile Home Villas, Inc., 521 So.2d 282 (Fla. 2d DCA 1988); see also, Colonial Acres v. Wallach, 558 So.2d 25 (Fla. 3d DCA 1989) (Ferguson, J., dissenting); Ashling Enterprises, Inc. v. Browning, 487 So.2d 56 (Fla. 3d DCA 1986); Garrett, 480 So.2d at 1326; Aristek Communities, Inc. v. Fuller, 453 So.2d 547 (Fla. 4th DCA 1984). These cases make clear that the court must view unconscionability in a two-pronged approach, i.e., procedural unconscionability and substantive unconscionability. The trial court found for the appellees on both aspects of unconscionability. We reverse because, while we agree with the trial court's determination of procedural unconscionability, we disagree with its conclusion that the rental increases were grossly excessive, and thereby substantively unconscionable. Thus, because the appellees were unable to carry their burden as to both prongs, the ruling in their favor cannot stand.
These are the facts as found by the trial court, and not disputed here. In 1978 the *1041 appellant purchased the park,[1] located in Hudson, for 1.1 million dollars. At that time, there were 70 developed lots of which approximately 30 were occupied. Also, the clubhouse, swimming pool, and other park amenities were substantially complete. After the appellant purchased the park, he expended additional sums to expand and complete the park. He instituted a sales program in 1978 which succeeded in achieving full occupancy of the park. Based on what the park's sales representatives told them and the promises in the advertising literature, tenants in the park expected that future lot rental increases would be based on the percentage increase in the Cost of Living Index. The park management later amended this to reflect that the owner would use either the increase in the Index or in actual operating costs, such as taxes and utilities.[2]
After reaching full occupancy, (approximately 478 lots), in 1984 the appellant placed a 4.2 million dollar, interest only, shared appreciation, balloon mortgage on the park. The funds received from this loan were withdrawn by the appellant and were not utilized for repairs, renovation, development, or improvement of the park. Significantly, the court made no factual finding that the services or amenities of the park have been reduced; but we also note that there were no major capital improvements, renovations, or additions to the park since its completion. The rents under review here were charged by the appellant for lots in a mobile home park which all parties acknowledge is a, if not the, premier mobile home park in Pasco County. The rental charges, the highest in Pasco County, varied within the park depending upon the situation of each lot, i.e., whether it was an inside, corner, small waterfront, or large waterfront lot.
Starting in 1982 the rent for the basic inside lot (the category containing the vast majority of lots) increased annually, from $114 per month to $197 per month in 1988.[3] These rents were substantially in excess of increases in the Consumer Price Index.[4] Each year the appellant unilaterally implemented these rental increases without giving the appellees an opportunity to bargain with him about the size of the increase. The order recites that this was the case for all residents regardless of age, education, intelligence, financial position, or business acumen. The appellees had no choice but to pay the rental increases or bear the burden of attempting to relocate their mobile home or sell the home with the possibility of a large loss. This was the situation which gave rise to the appellees' claims of procedural and substantive unconscionability.
In March of 1986, the appellees, 241 of the park's tenants/mobile home owners, filed a complaint alleging the rents charged were unconscionable under section 723.033 Florida Statutes (1985). By the time of the trial two years later, 330 of all tenants were parties to the lawsuit. Some of these parties had moved into the park after the original suit was filed. At the bench trial in 1988 both sides presented extensive evidence, including expert testimony regarding fair market values and the rents charged in other parks in Pasco and northern Pinellas Counties.
*1042 The trial court concluded that the park competed for tenants within a market primarily limited to western Pasco County, where only one other park was truly comparable to the appellant's. The court found that the appellant's park was a highly desirable residential park "which could have justifiably charged rental fees which ranged from 30% to 50% above the average of fees charged by Pasco County parks." The court further found the fair market rental value of the basic inside lot for the years in question to be the following:

 1982  $114
 1983  $125
 1984  $137
 1985  $147
 1986  $159
 1987  $165
 1988  $170

The court found that there was procedural unconscionability because of the absence of any meaningful choice on the part of the appellees, citing Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. 4th DCA), petition for review denied, 408 So.2d 1094 (Fla. 1981). We affirm this initial finding because of the evidence amply supporting it and because the trial court properly applied the correct law to the facts as found. Of course, had the trial court not found procedural unconscionability, there would have been no need to inquire further. If the appellees, indeed, truly had had an opportunity to bargain on an equal footing with the park owner about the size of the yearly increase, they would not now be heard to complain of the bargain they freely entered into.
Mobile home park tenancy presents a situation where mobile home owners, who generally own their residence which is usually of considerable size and misnamed "mobile," must lease the land upon which to place this structure. Because of the difficulties inherent in moving the home from one settled location to another, Pearce, 521 So.2d at 284, it is hard to imagine a situation where the park owner and the tenants are in an equal bargaining position on rent increases. The legislature, cognizant of widespread abuses against mobile home park tenants, sought to redress this resulting imbalance by giving the park tenants an avenue to the courts to remedy what the tenants perceived as unconscionable rental charges. Department of Business Regulation v. National Manufactured Hous. Fed'n, Inc., 370 So.2d 1132 (Fla. 1979); Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974). In adopting the Florida Mobile Home Act, the legislature stopped short of implementing strict rent-control in this setting. Nevertheless, park tenants can usually make, as did the appellees here, the necessary showing of procedural unconscionability for the court to consider next the merits of their substantive unconscionability claim.
After finding the necessary first prong of procedural unconscionability, the trial court then found that there was also substantive unconscionability, a finding which we set out in full below:
c. The facts set out above establish substantive unconscionability because of the outrageous degree of unfairness. Kohl, supra, Steinhardt, supra. It is clear to the Court that the park owner has overreached the park residents and has gained an unjust and undeserved advantage which it would be inequitable to enforce, Peacock Hotel, Inc. v. Shipman, [103 Fla. 633,] 138 So. 44, 46 (Fla. 1931), because:
(1) The lot rental increases are not based on a legitimate financial basis for calculating rental values, but are arbitrary and capricious in that they were driven by the consequences of the [appellant's] refinancing. Moreover, the increases are confiscatory in nature because they have reduced the value of the mobile home owner's property. B.J. Pearce v. Doral Mobile Home Villas, Inc., 521 So.2d 282 (Fla. 2d DCA 1988); Appel v. Scott, 479 So.2d 800 (Fla. 2d DCA 1985); Offner v. Keller Park Investors, I, Ltd., 19 Fla. Supp.2d 140 (Fla. 6th Cir.Ct. 1986); Fredricks v. Hofmann, 45 Fla. Supp. 44 (Fla. 12th Cir.Ct. 1970) aff'd 354 So.2d 992 (Fla. 2d DCA 1978); Section 723.031(5), Florida Statutes (1987).

*1043 (2) The increased lot rental amount is significantly higher than the fair market rental value of the lots in Club Wildwood Mobile Home Village. Aristek Communities, Inc. v. Fuller, 543 453 So.2d 547 (Fla. 4th DCA 1984); State v. DeAnza, 416 So.2d 1173 (Fla. 5th DCA 1982).
(3) The lot rent grossly exceeds that paid for lots of equal value in comparable parks. Ashling Enterprises v. Browning, 487 So.2d 56 (Fla. 3d DCA 1986), DeAnza, supra.

d. The rents imposed for the year 1982 have not been shown to be unconscionable.
The court thereafter set the rents at a level matching its previous findings of fair market rental value. The court also ordered that all the overpayments resulting from the rents actually paid from 1983 through 1988 should be credited to future rents until all the overpayment credits were exhausted. Because of our reversal, we do not reach the merits of the issue of the propriety of this remedy for overpayments.[5]
On appeal, the appellant contends that (1) the court erred as a matter of law in finding the rentals substantively unconscionable because the differences between the rents actually charged and the court's findings of fair market value are not so shocking to the conscience per se and (2) that the court refused to consider comparable parks in northern Pinellas County. The appellant claims that this latter issue constituted an abuse of the court's discretion because this industry works within a regional market and the appellant's park is within a regional market comprised of Pasco and northern Pinellas Counties. If the trial court had compared the rents charged by the appellant in this broader market, the appellant's argument continues, it would have found that any disparity in rents was even less shocking to the judicial conscience than was found in reviewing the more limited market of western Pasco County alone.[6]
The appellees, on the other hand, contend that the court was correct in basing its finding of substantive unconscionability on the "lack of reasonable financial basis" and "the consequences of the debt burden" because the Florida Mobile Home Act seeks to redress "unreasonable" rental charges, not merely those denominated "unconscionable" as evidenced by the use of the former term in various places throughout the Act. See, e.g., §§ 723.031(7) and 723.037(4)(a). The appellees would have us completely abrogate the distinction between "unreasonable" and "unconscionable" as used in various sections within chapter 723. They contend, furthermore, that the rents were shocking compared to other Pasco County parks and that the difference between the rents and the fair market rental value was grossly excessive. We cannot agree that the disparities of rent of the magnitude evidenced here over those of other Pasco County parks or over fair market rental values shock the judicial conscience. Moreover, we decline to blur the legal distinction between "unreasonable" and "unconscionable".
As we said at the outset, we view the evidence from the same vantage point as the trial court to determine whether the court's conclusion in this case is correct. This is because the determination of conscionability is a matter of law. § 723.033(1), Fla. Stat. 1987)[7]; Garrett v. *1044 Janiewski, 480 So.2d 1324, 1327 (Fla. 4th DCA 1985). Like the court in Garrett, we have no quarrel with the trial court's findings of fact including the court's determination of what constituted fair market rental value; we accept them because they are based upon substantial competent evidence. We disagree, however, that these facts demonstrate substantive unconscionability.
As far back as 1889 an unconscionable bargain or contract was defined as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Hume v. United States, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). That standard has not changed. B.J. Pearce v. Doral Mobile Home Villas, Inc., 521 So.2d 282 (Fla. 2d DCA 1988) (citing Appel v. Scott, 479 So.2d 800 (Fla. 2d DCA 1985), for the proposition that allegation of "grossly excessive" when compared with rents charged by similarly situated mobile home parks in county is sufficient to withstand motion to dismiss); Garrett, 480 So.2d at 1326 (unconscionable synonymous with "shocking to the conscience" and "monstrously harsh"); Bennett v. Behring Corp., 466 F. Supp. 689 (S.D.Fla. 1979) (citing Hume). The term "unconscionable" has a long history in our common law. Department of Business Regulation v. National Manufactured Hous. Fed'n, Inc., 370 So.2d 1132 (Fla. 1979) (finding rent control legislation unconstitutional because commission delegated too much legislative authority without enough meaningful guidelines as to legislative intent regarding what unconscionability is; commission needs such guidelines because, unlike the judiciary, it has not had the term developed through long common law history). If "unconscionable" is to be synonymous with "unreasonable," the legislature must clearly so state, not this court.
We are further convinced that the legislature knows how to distinguish between these two terms when it so chooses and that it has distinguished them in the relevant statutes here. Historically, chapter 723 contained the word "unconscionable" in section 723.033 in all its former versions. Indeed, this section has had no material change since its inception in Chapter 76-81, Laws of Florida, originally numbered in our statutes as section 83.754. Since then the legislature has amended the sections dealing with mobile home park owners and tenants almost annually. In a substantial reworking of the statutes in 1984, all the relevant sections were placed into a separate chapter, now chapter 723. Many new procedures were instituted including mediation or arbitration. Within chapter 723, there are several sections which do include the term "unreasonable." For example, section 723.037 provides that if, after informal mediation about lot rental increases, there has resulted no successful conclusion, and 51% of the park tenants state in writing that the rent increase is unreasonable, the tenants are entitled to have the dispute submitted to formal mediation pursuant to section 723.038. In section 723.031(7), dealing with the requirement that a prospectus be delivered to the tenant, the legislature used both "unreasonable" and "unconscionable" in the same sentence.[8] To read section 723.031(7) otherwise than that the two *1045 terms are distinct would result in a finding that either "unreasonable" or "unconscionable" is mere surplusage. This usage of both terms suggests to us that the legislature meant to keep the two terms distinct for the various uses it employed elsewhere in the chapter. Our holding preserves this distinction.
Keeping in mind then that the standard we are applying is one of unconscionability, rather than one of unreasonableness, we review the rents as actually charged to see if they are monstrously harsh or grossly excessive, Garrett, when compared to the trial court's finding of fair market rental value.[9] In comparing these two amounts, we find that the difference between them ranged from a low of $9 per month in 1984 (6.6% above fair market rental value) to a high of $27 per month in 1988 (15.9% above fair market rental value). We cannot say that "no man in his right mind" would pay these rents, especially in view of the fact that during the years under review approximately 100 tenants (including several appellees) moved into the park and voluntarily chose to pay these charges that the trial court found unconscionable.[10] The rental increases here are in the same range as those in Garrett. In Garrett, the rents were found to be $15 above fair market rental value for the two years under review there, differences of 11.54% and 13.64% above fair market rental value.[11] The appellate court in Garrett did not find such increases substantively unconscionable. Inasmuch as we align ourselves with the Fourth District Court of Appeal in Garrett regarding the "grossly excessive" standard of substantive unconscionability, we reach a like conclusion and hold that the rental increases in this case were not substantively unconscionable.
Reversed and remanded for entry of judgment for the appellant.
DANAHY, A.C.J., and FRANK and THREADGILL, JJ., concur.
NOTES
[1] We refer to the appellant as the purchaser for ease of reference; actually, he is the general partner of the limited partnership which purchased the park.
[2] The court found that the rental increases grossly exceeded both these guidelines. The complaint for declaratory relief, however, is neither one for breach of contract nor fraud nor misrepresentation theories, but merely that, under the statute, the rents were unconscionable. We, therefore, do not address these issues in deciding this case. The sole basis of our holding is the legal issue of unconscionability under section 723.033.
[3] The actual rents for each year and the percentage increase that such represented over the previous year are as follows:

 1982  $114
 1983  $134 (17.5%)
 1984  $146 (8.9%)
 1985  $168 (15.0%)
 1986  $181 (8.3%)
 1987  $189 (4.4%)
 1988  $197 (4.2%)

[4] The terms "Consumer Price Index" and the "Cost of Living Index" are used interchangeably by the trial court.
[5] Were we properly called upon to resolve this issue we would likely have no trouble approving the studied and comprehensive method chosen by the trial court as a workable and proper interpretation of section 723.033 in avoiding an unconscionable result by refusing to enforce the unconscionable provisions of the contract. We do not interpret the court's method as indirectly awarding damages where he could not do it directly. Cf., Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974) (in action for declaratory relief under lease arrangements and eviction procedures of new mobile home act, plaintiff's count for damages due to grievous anguish, pain and suffering causing injury, loss of reputation and medical expenses dismissed; dismissal not addressed in appeal where only constitutionality of new act addressed).
[6] Because of our holding, this evidentiary issue is moot.
[7] Section 723.033 provides:

(1) If the court, as a matter of law, finds a mobile home lot rental agreement, or any provision of the rental agreement, to have been unconscionable at the time it was made, the court may:
(a) Refuse to enforce the rental agreement.
(b) Enforce the remainder of the rental agreement without the unconscionable provision.
(c) Limit the application of the unconscionable provision so as to avoid any unconscionable result.
(2) When it is claimed or appears to the court that the rental agreement, or any provision thereof, may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its meaning and purpose, the relationship of the parties, and other relevant factors to aid the court in making the determination.
[8] 723.031 Mobile home lot rental agreements. 

(7)... .
This subsection shall not preclude the finding that a lot rental increase is invalid on other grounds and shall not be construed to limit any rights of a mobile home owner or to preclude a mobile home owner from seeking any remedies allowed by this chapter, including a determination that the lot rental agreement or any part thereof is unreasonable or unconscionable. [Emphasis added.]
[9] We use the amounts applicable to the basic inside lot since that type represented the vast majority of lots in the park.
[10] Were the trial court's findings affirmed, there would be some instances where a tenant who moved into the park in one year, voluntarily choosing to pay x amount of rent, will have his rent reduced the subsequent year according to the order under review. We find this anomaly to be an untenable interference with freedom of contract.
[11] It is interesting to note also that the park owner in Garrett had a high monthly loan obligation. Additionally, as in the case sub judice, there was no finding of any decrease in amenities or services coupled with the increase in rent as was the foundation for the unconscionable rents found in Ashling Enterprises, Inc. v. Browning, 487 So.2d 56 (Fla. 3d DCA 1986).