JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiffs Frank Pojman, et al., (appellants) appeal the trial court's granting summary judgment to defendants Columbia-Brookpark Management, LLC, et al. (CBPM), on plaintiffs' claim regarding the unconscionability of manufactured home park lot rental agreements. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On June 25, 2001, CBPM purchased Columbia Park manufactured home community, located in Olmsted Township, from the Brookins family, who had owned the park for over 30 years. Columbia Park consists of 1,092 rental lots designed for manufactured homes, which are individually owned by appellants. CBPM is considered a "senior community"; appellants are predominantly age 55 and older, with many residents on fixed incomes. On July 18, 2001, shortly after purchasing Columbia Park, CBPM notified appellants that, effective September 1, 2001, it was raising the lot rental rates pursuant to R.C. 3733.11. While the Brookins family operated the park, average lot rental rates increased by approximately four to five percent, or $10, per year with some years showing no rent increase on record.
 {¶ 3} Before reviewing CBPM's newly proposed rent, which is the subject of this appeal, we briefly discuss the pertinent background of manufactured homes. Although manufactured homes are many times referred to as "mobile" homes, they are, in fact, relatively immobile in a literal sense. Not only is the cost of relocating a *Page 4 
manufactured home somewhat prohibitive, many of the homes are susceptible to structural damage if transported. Because of these factors, many manufactured homeowners are forced to live with changes in land lease terms, as the alternatives are simply not feasible. As a result, in 1977, the Ohio legislature adopted R.C. 3733 et seq., which specifically governs tenancies in manufactured home parks.
 {¶ 4} Turning back to the facts of the case at hand, before CBPM's 2001 rent increase, 27 separate rental rates applied to the 1,092 homesites at the park. During litigation, the parties each submitted expert statistical reports detailing the history of the park's rental rates as well as CBPM's increase. The conclusions of the reports vary, which may be accounted for by the experts' different methodology in calculating the rent increase. For purposes of this opinion, the average rental rate at the park in 2000, before CBPM's increase, was $244. In 2001, after CBPM's increase, the average rental rate was $290. Thus, the rental rates increased by an average of approximately 19 percent. Additionally, CBPM increased the rent by another five percent in 2002, bringing the average rent to $304. It should be noted that there was no increase in rent at Columbia Park in 1999, therefore the rent was increased by $60 over three years.
 {¶ 5} On June 11, 2003, appellants, who total 918 individuals, filed a complaint in the Cuyahoga County Common Pleas Court,[1] alleging, among other *Page 5 
claims, that CBPM's rent increase was unconscionable under R.C. 3733.16. After reviewing the parties' motions, including the expert reports, the court, on August 2, 2006, granted CBPM's motion for summary judgment. As part of a 17-page opinion, the court determined that the increased rents were not substantively unconscionable as a matter of law. It is from this order that appellants appeal.
 {¶ 6} II. {¶ 7} In their first assignment of error, appellants argue that "the trial court erred by summarily dismissing appellants' [un]conscionability claims without complying with the statutory mandate to conduct an evidentiary hearing on all relevant factors." Specifically, appellants argue that R.C. 3733.16(B) mandates that appellants "have their day in court if their interests are to be safeguarded." R.C. 3733.16(B) reads as follows: "When it is claimed or appears to the court that the rental agreement, or any clause of it, may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination." *Page 6 
 {¶ 8} The operative clause within this statute for the purpose of this appeal is "a reasonable opportunity to present evidence * * *." Appellants argue that "whenever a resident claims a lease provision is unconscionable, the court must conduct a full evidentiary hearing * * *." In support of this proposition, appellants cite Central Ohio Coop MilkProducers v. Rowland (1972), 29 Ohio App.2d 236, in which the court held that a hearing was required to determine the unconscionability of a contract clause under R.C. 1302.15(B). R.C. 1302.15(B), which also uses the language "a reasonable opportunity to present evidence," governs transactions under Ohio's Uniform Commercial Code, rather than residential land leases for manufactured home parks.
 {¶ 9} CBPM, on the other hand, argues that a plain reading of the statute does not require an evidentiary hearing, and furthermore, if the legislature had wanted a mandated hearing when the unconscionability of provisions in manufactured home lot leases becomes an issue, the statute would have been drafted to expressly require a hearing. CBPM cites no law, Ohio or otherwise, to support its proposition. Furthermore, our research reveals that R.C. 3733.16(B) has not been interpreted by an Ohio court to date. *Page 7 
 {¶ 10} In the instant case, the court's opinion granting CBPM's summary judgment motion states the following regarding the statutory phrase "a reasonable opportunity to present evidence":
 "Plaintiffs misread R.C. 3733.16(B). * * * The parties have fully briefed the issue of unconscionability, submitted their evidence, and filed cross motions for summary judgment. The court assumes the parties have submitted all evidence relevant to their claims with their summary judgment motions. No party has pointed to any evidence that could only be presented at an oral hearing. As such, the summary judgment process provides plaintiffs a `reasonable opportunity to present evidence' on the issue of unconscionability in accordance with R.C. 3733.16(B) without holding a full evidentiary hearing. The court has fully complied with R.C. 3733.16 and since the evidence is not in factual dispute, it will proceed to determine plaintiffs' claims of unconscionability based on the parties summary judgment materials."
 {¶ 11} We review questions of statutory interpretation under a de novo standard. Moulagiannis v. City of Cleveland Board of ZoningAppeals, Cuyahoga App. No. 84922, 2005-Ohio-2180. Additionally, appellate review of granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that 1) there is no genuine issue of material fact; 2) they are entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.Dresher v. Burt (1996), 75 Ohio St.3d 280.
 {¶ 12} Civ.R. 56(C) does not, however, require the court to hold a formal hearing. Rulings on summary judgment "may involve as little as the submission of memoranda and evidentiary materials for the court's consideration." Brown v. Akron Beacon Journal Publishing Co. (1991),81 Ohio App.3d 135, 139. See, also, *Page 8 Transamerica Financial Services v. Stiver (1989), 61 Ohio App.3d 49;Gates Mills Investment Co. v. Pepper Pike (1979), 59 Ohio App.2d 155
(holding that whether to grant oral hearings on summary judgment motions is discretionary). We also note that Loc.R. 11(I)(2) states that "unless otherwise ordered by the court, motions for summary judgment shall be heard on briefs and accompanying evidentiary materials (as permitted by Civ.R. 56(C)) without oral argument." See, also, Civ.R. 7(B)(2).
 {¶ 13} While we find no cases directly on point, we hold that appellants were afforded the opportunity to present evidence, in accordance with R.C. 3733.16(B), via the summary judgment process. Civ.R. 56(C) states that rulings on summary judgment motions shall be based on "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." In the instant case, appellants did, in fact, file numerous documents including expert reports in conjunction with affidavits.
 {¶ 14} We also note that in interpreting the phrase "reasonable opportunity to present evidence" found in R.C. 1302.15(B), the Sixth District Court of Appeals of Ohio stated that the statute "does not provide a specific method for the presentation of evidence," and held that the court did not abuse its discretion when it did not hold a hearing regarding the issue of unconscionability. Young v. RollinsLeasing Corp. (Dec. 7, 1979), Lucas App. No. L-78-137. See, also, R.C.2715.04 (expressly stating that a defendant "may receive a hearing" on a motion for attachment by producing a *Page 9 
written request for the opportunity to be heard), and 00R.C. 2705.03
(expressly stating that the accused in a civil contempt of court proceeding shall be given an opportunity to be "heard").
 {¶ 15} Accordingly, we conclude that the statutory phrase "reasonable opportunity to present evidence" does not expressly mandate a hearing. Furthermore, taking into consideration the evidence that the court reviewed and the court's thorough analysis in granting CBPM's summary judgment motion, we cannot say that the court abused its discretion in making this decision without a hearing. As such, appellant's first assignment of error is overruled.
 III. {¶ 16} In their second and final assignment of error, appellants argue that "the trial court erred in granting summary judgment on appellants' [un]conscionability claims on the basis that reasonable minds could not conclude from the record that appellees' rent increase was [not] unconscionable." Specifically, appellants argue that CBPM's rent increase was both procedurally and substantively unconscionable. However, although somewhat unclear, appellants also argue that the court erred when it determined that a successful unconscionability claim under R.C. 3733.16 requires a plaintiff to prove both procedural and substantive unconscionability.
 {¶ 17} We first review the proper standard for unconscionability under R.C. 3733.16. Ohio law regarding the unconscionability of contract provisions is detailed *Page 10 
in Collins v. Click Camera Video (1993), 86 Ohio App.3d 826, 834
(internal citations omitted):
 "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. Unconscionability thus embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., `substantive unconscionability,' and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., `procedural unconscionability,' or, in the words of Professor Leff, `bargaining naughtiness.'
 * * *
 "[C]ourts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.
 * * *
 "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., `age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'"
 {¶ 18} In the instant case, the court discussed this two-pronged unconscionability test, encompassing both procedural and substantive aspects. However, after analyzing the factors associated with substantive unconscionability, the court found that CBPM's increased rent was not substantively unconscionable, and declined to analyze procedural unconscionability. *Page 11 
 {¶ 19} While there does not seem to be any Ohio case law regarding the unconscionability of a manufactured home park lot lease under R.C.3733.16, unconscionability has been litigated under R.C. 5321.14, which governs landlord/tenant rental agreements. In Carrols Corp. v. CantonJoint Venture (June 27, 1990), Stark Common Pleas No. 88-2115-1, the court applied the two-pronged unconscionability test to a commercial lease. Additionally, the Tenth District Court of Appeals applied the two-pronged procedural and substantive unconscionability test to a lease agreement between a man who rented a parking space for his 1980 Allegro motor home from a corporation that owned and operated a self-storage facility in Conkey v. Eldridge (Dec. 2, 1999), Franklin App. No. 98AP-1628. Finally, in Schwartz v. Alltel Corp., Cuyahoga App. No. 86810, 2006-Ohio-3353, this court applied the same two-part unconscionability test to a noncommercial, i.e., consumer, transaction. Accordingly, we conclude that Ohio's two-pronged test for unconscionability applies to claims brought under R.C. 3733.16.
 {¶ 20} We next review the merits of the court's determination that the lease was not substantively unconscionable. As noted earlier, the court only reviewed substantive unconscionability, because failure to "pass" one prong of the test renders the other prong moot.
 {¶ 21} The essence of substantive unconscionability is the fairness of the contract terms. However, the essence of appellant's second assignment of error is *Page 12 
that the court analyzed the wrong contract term, thus its ruling was inherently flawed. Appellants urge us to base our analysis on CBPM's "rent increase," noting that it is the single largest increase in Columbia Park's history. CBPM, on the other hand, argues that the court focused on the proper contract term — the rent charge resulting from the increase. As support for its position, CBPM cites a Florida case with facts similar to the case at hand. In Belcher v. Club Wildwood MobileHome Village (Fla. 2d DCA 1990), 558 So.2d 1039, the Second District Court of Appeals of Florida reversed the trial court's finding of substantive unconscionability regarding manufactured home park lot leases, by holding "we cannot say that `no man in his right mind' would pay these rents." Id. at 1045.
 {¶ 22} The Belcher court focused on the increased rent, rather than the isolated rent increase. "Keeping in mind then that the standard we are applying is one of unconscionability, rather than one of unreasonableness, we review the rents as actually charged to see if they are monstrously harsh or grossly excessive, * * * when compared to the trial court's finding of fair market rental value." Id. In the instant case, the court cited Belcher, among other similar Florida and California cases, reasoning that while out-of-state "decisions are not binding on this court, they are instructive in this case. Florida courts addressing similar issues primarily focus on the difference between fair market value for rent in the same geographic area and the actual rent paid by the plaintiff lessees." *Page 13 
 {¶ 23} This approach is further bolstered by the simple fact that the increase itself is not an actual "contract term"; it is the increased rental rate that is a term of CBPM's lease. After careful review, we conclude that the court did not err in analyzing the rent, rather than the increase, to determine unconscionability.
 {¶ 24} In the instant case, the court discussed four factors to determine whether the lot lease was substantively unconscionable: 1) the fairness of the contract's terms; 2) the charge for the service rendered; 3) the standard in the industry; and 4) the ability to accurately predict the extent of future liability. As stated earlier, the court analyzed the rent paid by appellants to CBPM, which is both a contract term and the charge for the service rendered, thus falling under the first and second factors in the four-part analysis. Furthermore, the court compared CBPM's rent with the fair market value within Greater Cleveland, as evidence of the third factor, the standard in the industry. Black's Law Dictionary (7thEd. 1999) 1549, defines "fair market value" as follows: "The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction; the point at which supply and demand intersect."
 {¶ 25} The court based its analysis on the expert data offered by appellants and found that CBPM's "2001 rent was reasonably similar to other manufactured home parks in the same geographical region during the same time period." The statistical data compared CBPM's rental rates with other manufactured home park *Page 14 
rents in Florida, Ohio, Greater Cleveland, and even more specifically, local parks that are considered senior communities. For example, appellants' documents show that for 2001, the manufactured home parks located in Cleveland rented lots at the following average rates: $299, $219, $235, $275, $275, $229, $345, $220, $235, $280, $190, and $220. Columbia Park's average rental rate for 2001 was $290. The average rental rate across the board for Cleveland manufactured home park lots in 2001 was $255. Thus, in 2001, Columbia Park's rate was $35 higher than the average. We also note that CBPM asserts that Columbia Park is at the high end of the spectrum for services and amenities offered to residents of a manufactured home park, and appellants do not dispute this statement.
 {¶ 26} While we are sensitive to appellants' argument that CBPM's increase may have posed a financial burden on Columbia Park's residents, we cannot say that the rent is substantively unconscionable. Because appellants failed to show this prong of the test, we need not discuss procedural unconscionability. Appellants' second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., and MELODY J. STEWART, J., CONCUR
[1] This action was originally filed as an application by tenant to deposit rent with the clerk of the Berea Municipal Court under R.C.3733.12(B)(1), in which the rent money in question was held in escrow until the court resolved the issue. See Berea Municipal Court Case No. 01-CVJ-02061. Appellants alleged that CBPM's rent increase was unconscionable. The municipal court found that the rent increase was not unconscionable per R.C. 3733.12(B)(1). CBPM appealed that decision and on March 13, 2003, we vacated the municipal court's order and dismissed the appeal because, pursuant to R.C. 1901.17, a municipal court has jurisdiction only in cases where the damages claimed are less than $15,000, and appellants claimed damages in excess of $25,000. SeeColumbia-Brookpark Management, LLC v. Schindler, et ai, Cuyahoga App. No. 81092, 2003-Ohio-1156. After we dismissed this original claim, appellants properly filed in the common pleas court. *Page 1