RESTANI, Judge, concurring:
I agree with the majority’s conclusion that the arbitral forum was unavailable, for the reasons stated. I also agree that arbitration may not be compelled here, but for different reasons from those relied on by the majority. Here, from the outset Mr. Inetianbor objected to arbitration on numerous grounds, including that the agreement to arbitrate was unconscionable. Although the District Court found that the arbitral forum was unavailable, it neither addressed substitution of a different arbitrator under § 5 of the FAA nor reached Mr. Inetianbor’s claim of unconscionability.
Mr. Inetianbor does not ask us specifically to affirm on the grounds that the agreement to arbitrate was unconscionable, but he has repeatedly maintained on appeal that the agreement was a sham. I agree and conclude Congress did not intend for the federal courts to compel arbitration in such circumstances and that we should exercise our discretion to affirm the District Court on this alternate ground. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir.2001) (holding that in reviewing a district court’s decision on a motion for summary judgment de novo, the decision can be affirmed “on any ground that finds support in the record,” including an alternate ground); Stewart v. Happy Herman’s Cheshire. Bridge, 117 F.3d 1278, 1286 (11th Cir.1997) (accepting Appellee’s suggestion to affirm on alternative basis); Chamberlain v. United States, 869 F.2d 1501, 1501 (11th Cir.1989) (affirming dismissal of case on alternative ground “which is obvious and readily ap *1355 plied in this case.”); Jackson v. Payday Fin., LLC, No. 12-2617, 764 F.3d 765, 768, 770, 777-79, 785, 2014 WL 4116804, at *1, *3, *7-9, *13 (7th Cir. Aug. 22, 2014) (invalidating a substantially similar arbitration agreement as unconscionable).
The FAA provides that a written agreement in any contract to arbitrate “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. One such ground for the revocation of a contract or arbitration agreement is unconscionability. See Cmty. State Bank v. Strong, 651 F.3d 1241, 1267 n. 28 (11th Cir.2011) (noting that the Supreme Court’s decision in Concepcion “preserved generally applicable contract defenses such as ... unconscionability” to arbitration agreements (internal quotation marks omitted)); see also Jackson, 764 F.3d at 768, 770, 777-79, 785, 2014 WL 4116804 at *1, *3, *7-9, *13 (invalidating a substantially similar arbitration agreement as unconscionable). Under Florida Law, courts must find an arbitration agreement to be both substantively and proeedurally unconscionable to invalidate the agreement. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1134 (11th Cir.2010).
In Florida, in determining whether an arbitration agreement is proeedurally unconscionable, courts look to:
(1) the manner in which the [arbitration agreement] was entered into;
(2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the [arbitration agreement] was entered into; (3) whether the terms were merely presented on a ‘take-it-or-leave-it’ basis; and (4) the complaining party’s ability and opportunity to understand the disputed terms of the contract.
Id. at 1135. The “central question” is “whether the consumer has an absence of meaningful choice in whether to accept the contract terms.” Id. (citing Belcher v. Kier, 558 So.2d 1039, 1042 (Fla.Dist.Ct. App.1990)).
Substantive unconscionability is determined by looking at whether the terms of the agreement are “unreasonable and unfair.” Id. at 1139. “A contract is substantively unconscionable if its terms are so outrageously unfair as to shock the judicial conscience.” Bhim v. Renb-A-Center, Inc., 655 F.Supp.2d 1307, 1313 (S.D.F1. 2009) (internal quotation marks and citations omitted).
The forum selection provision in the agreement to arbitrate between Mr. Inetianbor and CashCall is both proeedurally and substantively unconscionable. It is proeedurally unconscionable, not just because of unequal bargaining power, but because of CashCall’s actions Mr. Inetianbor had no ability or opportunity to understand the forum selection clause. See Pendergast, 592 F.3d at 1135. The record establishes that no set rules or procedures for conducting arbitrations exist within the Tribe. And the Tribe expressly said that it does not select or approve arbitrators. When faced with a substantially similar forum selection provision, the Seventh Circuit noted, “it was not possible for the Plaintiffs to ascertain the dispute resolution processes and rules to which they were agreeing.” Jackson, 764 F.3d at 778, 2014 WL 4116804, at *8. Because the processes and rules were non-existent, it was impossible for Mr. Inetianbor to understand the provision of the agreement to arbitrate specifying the Tribe, together with its set of rules, as the arbitral forum. See id. Accordingly, the clause is proeedurally unconscionable.
The terms of the agreement to arbitrate are substantively unconscionable because *1356 the forum selection clause, written by CashCall, explicitly chose a nonexistent arbitral forum and set of rules, with an aura of governmental legitimacy. For essentially the reason stated by the District Court and the majority I also conclude the contract does not permit any tribal member or tribal elder to act as an arbitrator without Tribal approval. The District Court also found, however, that the Tribe did not select or approve arbitrators, that there were no tribal consumer dispute rules, and that there were no procedures for conducting arbitrations under the auspices of the Tribe. Although the District Court here did not go as far as the Court in Jackson, which concluded that “there simply was no prospect of a meaningful and fairly conducted arbitration” and that the forum selection provision was “a sham and an illusion,” Jackson, 764 F.3d at 778, 2014 WL 4116804, at *8 (internal quotation marks omitted), the record before us would compel any factfinder to reach the same result.
Substituting an arbitrator under § 5 of the FAA would be an insufficient antidote to the egregious actions of defendant CashCall. In evaluating a substantially similar agreement, the Seventh Circuit reasoned that because the agreement provided for any hypothetical dispute to be decided under the auspices of “a legitimate governing tribal body” it was unconscionable in that no dispute could be decided under that body. Id. at 779, 2014 WL 4116804, at *9. Further, the Seventh Circuit noted that even if the court substituted an arbitrator under § 5 of the FAA, it would not cure the agreement’s failings because there would be no adequate substitute. Id. at 779-81, 2014 WL 4116804, at *9-10. The Court characterized the contract as
containing] a very atypical and carefully crafted arbitration clause designed to lull the loan consumer into believing that, although any dispute would be subject to an arbitration proceeding in a distant forum, that proceeding nevertheless would be under the aegis of a public body and conducted under procedural rules approved by that body.
Id. at 781, 2014 WL 4116804, at *10. Substitution under § 5 of the FAA would have left the loan consumer “without a basic protection and essential part of his bargain — the auspices of a public entity of tribal governance.” Id. Thus, because “[t]he loan eonsumer[] did not agree to arbitration under any and all circumstances, but only to arbitration under carefully controlled circumstances — circumstances that never existed and for which a substitute cannot be constructed,” the agreement was unconscionable. Id. The same reasoning applies here.
I conclude that the cases addressing whether more typical arbitral provisions are “integral” to the agreement to arbitrate are inapplicable here. Putting aside the issue of when ordinary arbitration terms are integral, particularly where the contract contains a severability clause, I note that in Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir.2000), and its progeny, where arbitration was compelled, the forum became unavailable because circumstances changed during the time between the signing of the arbitration agreement and the time of the dispute. Here, the alleged forum and procedures selected never existed. At the time the parties signed the agreement to arbitrate, the Tribe did not have consumer dispute rules and did not involve itself in private arbitrations. See Jackson, 764 F.3d at 779-81, 2014 WL 4116804, at *9-10.
Finally, it would not frustrate the FAA’s purpose to refuse to substitute an arbitrator. Although the FAA indicates a policy favoring enforcement of arbitration agree *1357 ments, its purpose is not to allow parties to make up non-existent forums and rules in an effort to create the fagade of a legitimate, reasonable dispute resolution system, especially one conducted by a sovereign entity. See id. at 781, 2014 WL 4116804, at *10. Accordingly, this arbitration agreement cannot be saved by appointing a substitute arbitrator under § 5 of the FAA. Therefore I concur.